(38 South. 810.)

No. 15,435.

LOPES v. SAHUQUE.*

(Dec. 5, 1904. On the Merits, May 8, 1905.)

APPEAL — DISMISSAL — FILING TRANSCRIPT —INJURY TO CHILD—VIOLATION OF ORDINANCE—EVIDENCE.

Appellants have three judicial days after the return day within which to file the tran-

_____

*Rehearing denied June 5, 1905.

script, whether the court is in session on that day or not.

1. It does not necessarily follow, because an act which is charged to have caused damage to another is violative of a city ordinance, that that fact itself enters as a factor in determining whether the party complaining has a right of action.

2. Courts have much less latitude in the "interpreting" statutes of ordinances—that is, in ascertaining the meaning of the language used —than they have in construing or "applying" them; that is, in determining their scope and operation, their object and purpose, and the mischief which they are intended to prevent. The ordinance charged to have been violated in this case did not have as its object the protecting and safeguarding of children from their unauthorized acts in entering and playing in carts left upon the streets by their owners. An injury received under such circumstances would not be the natural result of the violation of the ordinance, but a collateral consequence dependent to creating pecuniary responsibilities upon the special facts of the case. The general public are not put upon guard as to the danger to be apprehended from the violation of an ordinance further than as to the specific injury or class of injuries which it was its object and purpose to prevent.

3. The violation of an ordinance does not necessarily carry with it the abrogation of the application to particular cases of the rules of contributory negligence, or other questions affecting defensively the liability of the defendant for damages.

4. Evidence that no accident had followed for a long time after the existence of a certain fact would not be determinative of its not being actually by a concurrence of special facts dangerous, but the existence of the fact without injury for a long time, with factors constantly present calculated to produce injury if really dangerous from those factors, would go far to do away with the anticipation of resulting injury. The fact that notwithstanding repeated violations of the ordinance occurred to the knowledge of the parents of the children in the neighborhood, and particularly of the child injured, without objection or protest by them, is evidence that the violation was not considered dangerous. In this particular instance the mother saw the child playing in the cart without recalling him.

5. Responsibility for injuries to children is broader when the result is from acts of commission than when they are the result of acts of omission leading up to unexpected, unanticipated consequences.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Alphonse Lopes against Paul E. Sahuque. Judgment for plaintiff, and defendant appeals. Reversed.

Paul Louis Fourchy and Charles Ferdinand Claiborne, for appellant. Solomon Wolff, for appellee.

On Motion to Dismiss.

NICHOLLS, J. Plaintiff and appellee moves to dismiss this appeal on the ground that it had been abandoned by the appellant.

This claim is based upon the fact that the appeal was made returnable on the first Monday of November, 1904 (the 7th of November), but the transcript was not filed until the 10th of November, though the court was in session on the return day.

The attention of the court is called to the fourth and fifteenth sections of Act No. 45, pp. 100, 101, of the Extra Session of 1870, which read as follows:

"That in all cases of appeal the judge of the court from which it is taken shall make the appeal returnable to the Supreme Court at the next return day for appeals from the parish if there shall be time enough for granting to give notice required by law to prepare the record— if not then he shall fix the return day for some day within the next term after the appeal is granted, allowing sufficient time to give the citation required by law, and to prepare the record if sufficient time within the term shall remain; if not, he shall fix the return day for the following term.

"If the Supreme Court shall not be in session on the day fixed for the return day of any case it shall be sufficient for the appellant to file the record within three judicial days at the first session of the Supreme Court thereafter."

Section 15 repeals all laws or parts of laws in conflict with the provisions of the act.

The argument in behalf of the motion is that a transcript must be filed on the day it is returnable, unless it should happen that the Supreme Court is not in session on that day. If that should happen, then, and not otherwise, the appellant may file it on some other day, provided it be within three judicial days at the first session of the court.

Before the enactment of the act in question the subject-matter was governed by ar-

ticles 588, 589, and 885 of the Code of Practice and the jurisprudence under these articles.

It is conceded that, under these articles and that jurisprudence, appellants were not forced to file their transcripts on the return day, even though the court was in session that day, but were permitted to file them within three judicial days following the fixed return day.

This court, in the judgment rendered in the case of Wood v. Wood, 32 La. Ann. 801, long after the passage of the act of 1870, held that this practice had been almost invariably so recognized that the jurisprudence on that point was so ancient that it had become a fixed rule throughout the state, which, far from disturbing, the court formally indorsed; that it deemed it very unnecessary to refer to authorities which were very numerous and admitted by counsel to exist.

Counsel declares that the jurisprudence was not well settled when this declaration of the court was made. He says that his examination failed to show that the issue had been at all before the court between 1870 and 1880, and asserts that the jurisprudence before 1870 was not at all in point, because it was based on articles of the Code which had been superseded in this particular, at least by the act of 1870, and that the truth was that the act of 1870 was not called to the attention of the court.

We are not warranted in assuming that the court, in passing upon the question in the Wood Case, did not take into consideration the act of 1870. What the court did unquestionably notice was the fact (in spite of that statute) of the universal recognition and acquiescence up to that late date by the bar of the state in the practice which had been fixed by the former jurisprudence.

If the question had not been presented to and passed upon by the Supreme Court after 1870, it was obviously precisely because, in the opinion of the profession, the new statute had not brought about the change which counsel contends for.

The practice of the court has been declared to be the law of the court, and, if the practice on this subject was declared to have become fixed as far back as 1880, how could it be expected that we should change it twenty-four years later? To make this change would work the greatest injustice to parties and attorneys who had based their conduct upon a constant jurisprudence.

Counsel himself refers to numerous decisions of this court recognizing the existence of the practice: Rost v. St. Francis' Church, 5 Mart. (N. S.) 192; Bell v. Williams, 3 La. 250; Palfrey v. Winter, 8 La. 205; Vancampen v. Morris, 6 Rob. 79; Bouligny v. M. White, 5 La. Ann. 31; and French v. Harrod, 9 La. Ann. 21; and to the later cases of Rosetta Gravel Co. v. Adler, 52 La. Ann. 689, 27 South. 183, and Posner v. Southern Exhaust & Blow Pipe Co., 109 La. 658, 33 South. 641, which later cases, he declares, have no bearing, as matters fell under the terms of the act of 1870.

The views we have expressed above are a repetition of those recently announced in State ex rel. Perkins v. Recorder, 111 La. 237, 35 South. 534, to which our attention has been specially called by appellant's counsel. The point now urged by the appellee was directly presented in that case, and was held to be not well taken.

The act of 1870 found the jurisprudence fully established at that time as to the date up to which an appellant could file his transcript when the court should be in actual session on the fixed return day, but the situation was not defined as to what it should be if the court was not in session on that day. The object of the statute was simply to place that particular situation beyond controversy, not to alter or repeal the already settled practice. There is no inconsistency between the provisions of the new statute and the continuance of the prior practice.

LOPES v. SAHUQUE.

The motion to dismiss the appeal is denied.

### On the Merits.

The plaintiff sues in this case for himself individually, and as tutor of his minor son, Hypolite Lopes.

He asks for judgment in his own favor against the defendant for $2,575. As tutor he prays for judgment against him for $10,000.

He charges that on the 15th of July, 1903, his minor son was seriously injured through the fault and negligence of the defendant, and without any fault or negligence on the part of either his son or himself. That defendant conducts a grocery store at 710 Royal street, in New Orleans, being at the corner of that street and Orleans street. That on the day mentioned, and as he had done habitually before, the defendant, in violation of the city ordinance, left his cart or two-wheeled vehicle standing in the street near his store while the same was not in use. That so standing, with the shafts thereof resting on the street, it was a dangerous contrivance, well calculated to attract the attention of children, and to invite them to play therewith and therein. The said vehicle, resting as it does on two wheels, is easily tilted first one way and then another, and the same was altogether dangerous to life and limb.

That on the said day petitioner's son, Hypolite, while playing near the parental home, which occupies the opposite corner of Royal and Orleans street, was called by some children who were playing in the cart and asked to get a fan which one of them had dropped out of the cart on the ground. That the child crossed the street and had picked up the fan, and was handing it to the children in the cart, when suddenly the latter tilted, striking and severely injuring the boy in the head, badly bruising one of his legs, and badly fracturing the other one above the knee. The boy was taken to his home, where he immediately received the best medical attention, was nevertheless confined to his bed for two months, was compelled to use crutches for three months more, the final result of the injury being that he was permanently injured, as the leg which was broken was now not less than one inch shorter than the other, thus crippling him for life. That the boy was a strong, healthy, and active lad when injured; that the injury caused him great pain and suffering; that the accident was wholly due to the negligence and want of care of the defendant. That for all the injury done, and the severe pain and suffering caused the boy, petitioner asked for the sum of $10,000.

That he himself paid the physician $75 for medical attention to the lad, and that for the pain and suffering and anguish which petitioner and his wife suffered in the premises he asked for $2,500. He prayed for judgment in accordance with his pleadings.

Defendant answered. After pleading the general issue, he averred that his wagon was on the street only a sufficient time to allow him to store his goods and merchandise in his warehouse, and no one had any right or authority to use or play with the same. That, if plaintiff's son was injured in any manner or form, it was through gross contributory negligence of both plaintiff and his son, and without defendant's fault.

The district court rendered judgment in favor of the plaintiff and against the defendant for account of his minor son for the sum of $2,000, and in favor of the plaintiff individually against the defendant for the sum of $575, with interest on both amounts from date of judgment. Defendant appealed.

Defendant urges that he was guilty of no negligence; that the cart which was upon the street was not dangerous; that he had no reason to anticipate that children would attempt to get into it; that the ordinance which he is charged with violating did not have in view the protection of children, but

of guarding against the obstruction of streets; that if he were to be liable for damages for its infraction it should be only for such damages as would be the direct, natural result and consequence of the "obstruction of streets"; that the parents of the child should have kept it out of the streets.

The ordinance referred to is as follows:

"Sec. 5. Be it further ordained, that from and after the passage of this ordinance, it shall not be lawful for the owners of any cart, dray, wagon, carriage or other vehicle to suffer the same to remain in any of the streets or public ways of the city, during the day or night unless the same shall be in actual use at the time under a penalty of three dollars, and any such cart, dray, carriage or other vehicle shall be taken by the street commissioner or his deputies by the day or night police to the city pound of the district where so found in contravention and be kept there for three days and should the owner or owners of the same not claim and pay the fines on the same within three days after the same have been impounded, then it shall be the duty of the street commissioner to advertise and sell the same as provided for in the case of strays in the third section of this ordinance, or he shall report the same to the assistant attorney of the city. "Approved, April 6th, 1853."

In defendant's syllabus the following points are urged:

(1) The violation of a city ordinance is not even a prima facie evidence of negligence. 21 Am. & Eng. Ency. of Law, p. 481, No. 6.

(2) Negligence consists in the neglect of the use of ordinary care or skill towards a person to whom the defendant owes the duty of observing care or skill, to avoid a danger which should have been foreseen, by reason of which neglect the plaintiff, without contributory negligence on his part, has suffered injury to his person or property. 21 Am. & Eng. Ency. of Law, p. 458 (note); Railroad Co. v. Jones, 95 U. S. 439, 441, 24 L. Ed. 506.

A defendant can only be required to guard against a probable or anticipated danger. New Orleans & N. E. R. Co. v. McEwen, 49 La. Ann. 1184, 1196, 22 South. 675, 33 L. R. A. 134.

(3) Parents cannot recover for their own pain and anguish resulting from injury to their child. 2 Thompson on Negligence, p. 1260, § 45; 8 Am. & Eng. Ency. of Law, p. 664d; Black v. Railroad Co., 10 La. Ann. 33, 63 Am. Dec. 586; Earhart v. Railroad Co., 17 La. Ann. 245.

In plaintiff's brief the following points are made and authorities referred to:

(1) The mere failure to observe an ordinance constitutes negligence. 21 Am. & Eng. Ency. of Law, p. 515; Cooley on Torts (Ed. 1879) c. 20, p. 650; Hale on Torts (Ed. 1896) p. 476; Union Pacific Ry. Co. v. McDonald, 152 U. S. 283, 14 Sup. Ct. 619, 38 L. Ed. 434; Tucker v. Ills. Central, 42 La. Ann. 117, 7 South. 124; Clements v. Electric Light Co., 44 La. Ann. 692, 11 South. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348; McCloughry v. Finney, 37 La. Ann. 27.

(2) One who maintains dangerous employment or appliances on uninclosed premises of a nature likely to attract children at play, or permit dangerous conditions thereon, is liable to a child who is injured, though a trespasser at the time when the injuries are received. 21 Am. & Eng. Ency of Law, 474, note 1, citing, inter alia, Westerfield v. Levis, 43 La. Ann. 64, 9 South. 52, Shearman & Redfield (4th Ed.) vol. 1, § 70, et seq., p. 100, and Ft. Worth & D. C. R. Co. v. Robertson (Tex. Sup.) 16 S. W. 1093, 14 L. R. A. 782; Sutherland on Damages, vol. 1, p. 26; Railroad v. Stout, 17 Wall. 657, 21 L. Ed. 745.

(3) If the language of a statute (or ordinance) is clear and admits but one meaning, the Legislature should be intended to mean what it has intended, and there is no room for construction as to the motive of the Legislature nor to depart from a meaning clearly conveyed. 26 Am. & Engl. Ency. of Law, pp. 598, 599, note.

Whoever unlawfully obstructs the passage over the sidewalk is responsible for the consequences. By placing himself in the wrong he shuts himself out from defenses that might otherwise avail him; because, when the act is inherently unlawful, the question

of the negligence of the party injured by it does not arise. Wood on Nuisances, §§ 261-265.

"He is in a different position from one who occasions an injury by the imperfect doing of a legal act, in which case there is carelessness; but in this case there is positive defiance of the law, and a resulting injury from the very act that constitutes defiance. * * * Months or years may elapse before a serious injury results from blocking the sidewalk, and many score of shopkeepers may be equally culpable; but when injury has been done, the party who occasioned it must bear the brunt of it." Salisburg v. Herchenroder, 106 Mass. 458, 8 Am. Rep. 354.

### Opinion.

The plaintiff and the defendant with their families live, and have lived for a number of years, opposite to each other, on the wood or lake side of Royal street, at the corner of Orleans street. Defendant keeps a retail grocery, and plaintiff a small toy or notion shop. In connection with his grocery defendant uses a two-wheeled cart for the purpose of receiving and delivering his goods. His premises seem to be small, and in the rear of the same he has both a stable and a warehouse. In the latter he stores his goods, from which they are taken as needed. The testimony shows that for a long time the defendant has permitted this cart frequently to be left unattended (the horse being taken therefrom) in Orleans street with its shafts upon the ground, without any apparent necessity for this during that period. Neither the public authorities nor private individuals seem to have raised objections, though the fact itself was in violation of a city ordinance.

No one appears to have apprehended that any danger would result to children from the cart being so left, though there were a number of children in the neighborhood. The mother of the child and her servant, Marie Larroux, both testified on the trial that they apprehended no danger from the cart's being left as it was. That there was some danger, in fact, under a concurrence of circumstances, is evident from the accident which happened in this particular instance.

Plaintiff's son was unquestionably injured by the defendant's cart tilting back while left standing in the street as above stated, the tilting itself being occasioned by a colored girl 15 or 16 years of age and a number of white children getting in it while playing, and running to the rear of it. The testimony leaves us in extreme doubt whether plaintiff's son was not himself in the cart at the very moment of the accident. He had been playing in it with the other children just before the accident, to the knowledge of his mother and of Marie Larroux, and with no disapprobation from the mother. Though the latter was placed on the stand after Marie had given her testimony, the mother did not attempt to contradict her, nor was she questioned herself on that subject at all. A colored girl who was in the cart with the children was called as a witness by neither side. We must deal with this case from the standpoint of the child being either in the cart at the time of the accident, or as having just got down from it. Plaintiff relies very greatly upon the fact that at the time of the accident defendant was violating a city ordinance. He contends that if such was the case he was guilty ipso facto of a fault, and, if guilty of a "fault," defendant was responsible, under the terms of article 2315 of the Civil Code, for the injury occasioned. He maintains that if the defendant by his act of leaving the cart upon the street furnished children of the neighborhood opportunity to go into it and play, as it would be natural for them to do, he would be liable for any injury resulting therefrom, though the children were third persons and were themselves not free from fault. Plaintiff's counsel insists that, when the language of a city ordinance is perfectly clear and free from ambiguity, it is the duty of the courts to apply it upon every occasion where a violation of the same

is made to appear and the violation has some connection with a resulting injury; in other words, that, on the application or construction of laws, courts have no right to examine into their object and purpose, in whose interest and for whose benefit they were enacted, nor consider what mischief they were intended to remedy. That proposition is unsustainable. There is not a day but some court is called upon to restrict the scope of statutes so as to bring their operation within the limits of the intention and object of the General Assembly, however general the terms may be. Courts are much more limited in the interpretation of statutes—that is, in ascertaining the meaning of the words employed by the Legislature—than they are in the application and construction of the laws, taking notice of the object and purpose of the same.

The present action is not one brought by the city declaring upon a violation of the ordinance against the party violating the same, and seeking to have the penalty imposed by it enforced, but an action by a third party claiming damages to a particular person from an injury which he suffered from the specific act, in which the violation of the ordinance is only incidentally brought under consideration of the court in determining collaterally, so far as the ordinance is concerned, the legal consequences of the act which produced the injury.

The defendant may have committed a fault for which he is legally responsible towards some persons and to some extent, but the question here is, has the defendant been guilty of a fault towards the plaintiff, and under circumstances such that the latter can hold him responsible to him in damages? We do not understand that the violation of a statute is intended to carry or does carry with it as a consequence the abrogation of the application to particular cases of the rules of contributory negligence, or other questions ordinarily affecting defen-

sively the liability of the defendant for damages. The ordinance declared to have been violated in this case was not intended to protect and safeguard generally children who might go into the street and there enter upon or into the property of citizens which might have been incautiously or even improperly left there. That was not its purpose, and injury to a child received under such circumstances would not be the natural and direct consequences of the violation of the ordinance, but a collateral consequence dependent as to its legal effect upon the special facts under which the injury occurred.

It is a difficult matter for courts to adjust and settle the conflicting rights and obligations of citizens arising out of the complex conditions forcedly existing in crowded cities with narrow streets and people of different pecuniary conditions. It would be a harsh rule which would impute as negligence to parents of small means engaged in making their daily livelihood their inability to keep a constant lookout upon each action of their children. It would also be a harsh rule to restrict the freedom of movement of such children as to withdraw generally from them all protection from injury because, when received, they were at a place where by strict law they should not have been. It would, however, be a very harsh rule which would subject citizens to heavy damages for injuries received from the unexpected, unanticipated, and unauthorized act of children entering, while playing on the street, into a cart or carriage where it had been left standing (without a horse attached thereto) in the street, which vehicle remains as much their property while in the street as if upon their own premises. It is said that, in view of the prohibitory character of the ordinance, citizens were bound to anticipate that children might take such action, and would consequently assume the risk in violating the ordinance of all resulting injury; that, if

DOMINGEAU v. DARBY.

the act was really dangerous, the fact that no injury immediately followed from it was a mere fortunate circumstance, which should and could have no legal influence in determining the rights and obligations of parties.

We do not think that the general public were put upon guard or notice as to the danger to be apprehended from the violation of a prohibitory ordinance further than as to the specific injury or class of injuries which it was its object and purpose to prevent.

Considering a certain fact from the standpoint of its actual, dangerous character, evidence that no accident followed immediately therefrom cannot be determinative, as the existing situation might not be such as to give rise to one; but, considering the act from the standpoint of its being one from which apprehension of resulting danger would or should naturally arise, the continued existence of the act for a very long while, followed by no accident, although there were factors constantly present calculated to bring about accidents, if it was attractive and really dangerous, would go far to do away with the expectation or anticipation of dangerous consequences. Although there were young children in the neighborhood, it is testified to that this was the first time they were known to have gone into the cart. We do not think that we should announce any fixed rule on this subject, but deal with individual cases, as they arise, in view of all the surrounding circumstances. We consider the absolute inaction of the parents of the injured child during so long a period in respect to the leaving of the cart upon the street—the presence of the mother at the time of the accident, and her knowledge on this particular day that he was in the cart, and her failure to call him to her—is evidence that the leaving of the cart by the defendant on the street was not per se dangerous; that it was not in fact calculated to attract children to get into the cart; that the entering of the children into the cart on that particular day was a fact not to be expected or anticipated. We do not think that the leaving of the cart in the street under the circumstances of this case was an act per se dangerous, except under a concurrence of peculiar circumstances, remote from the accident; that is, remote as to their liability to exist. Responsibility for injury to children is broader when the injury results from affirmative, or acts of commission, by the parties injuring them, than by acts of unintentional omission leading up remotely to injury. Dealing with this case from the liability of the defendant under the provisions of article 2315 of the Civil Code, and under the special state of facts disclosed, we are of the opinion that the judgment appealed from is erroneous.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that it be and is hereby annulled, avoided, and reversed, and plaintiff's demand is rejected, with costs in both courts.