No. 187

First Circuit

SMITH ET AL. v. CITY OF BATON
ROUGE ET AL.

(December 6, 1927. Opinion and Decree.)
(January 5, 1928. Rehearing Refused.)
(May 7, 1928. Reversed by Supreme Court
on Writ of Certiorari and Review.)

See also, 166 La. 472, 117 So. 559.

Charles A. Holcombe and C. C. Bird, of
Baton Rouge, attorneys for plaintiffs, ap-
pellees, Smith.

Taylor, Porter, Loret & Brooks, of Baton
Rouge, attorneys for defendant, appellant,
Baton Rouge Water Water Works Co.

H. Payne Breazeale, of Baton Rouge,
attorney for defendant, appellee, City of
Baton Rouge.

ELLIOTT, J., dissents for written rea-
sons.

LECHE, J., concurs for written reasons.

MOUTON, J. The Baton Rouge Water
Works Company as assignee, is under
contract to supply the City of Baton Rouge,
the other defendant, with water; and, for
that purpose, is authorized under the con-
tract to take up mains and pipes in the
streets of the city. A child of plaintiffs,
Mr. and Mrs. Smith, two years and six
months old at the time, was drowned in
a cut or excavation which had been made
by the Baton Rouge Water Works Com-
pany in Julia Street of said city for the
purpose of repairing a leaking valve in
the main of the company's water pipe.

This excavation was approximately four
feet, five inches in width, eight feet in
length and had an average depth of about
three feet. The clay and gravel taken
out of the excavation was piled around it
at the height of approximately two feet
and which was evidently intended as a
barricade or protection. The excavation
was dug out on the 18th of May, 1926,
and was closed on June 3, 1926, by boards
thrown over it. The child was drowned
on May 31, 1926, between the hours of
five-thirty and six in the afternoon.

The City and water works company are
sued by the parents of the child in dam-
ages for the gross amount of $42,000.
Judgment was rendered against the water
works company for $5,000, and the suit
was dismissed as to the City against which
the claim is not pressed in this Court.

The Baton Rouge Water Works Company appeals.

The grounds of defense of the Baton Rouge Water Works are that it has not been guilty of negligence in connection with the excavation; if negligent, the plaintiffs, the child's parents, were guilty of negligence which contributed to the child's death. It also pleads, if negligent, it was not so towards the child, and, therefore, it was not the cause of his death.

It may be appropriate to state at the outset that this child of two years and six months when it lost its life, was then incapable of contributory negligence. State vs. Waggner, 42 La. Ann. 63, 8 So. 209; Palermo vs. Orleans Ice Mfg. Co., 130 La. Ann. 833, 58 So. 589, 140 L. R. A. (N. S.) 671.

The house of the plaintiffs is north of Julia Street; the excavation was a few feet from the curbing on the south side of that street, and was about forty or forty-five feet from the home of the plaintiffs.

The proof is that in the afternoon of this deplorable accident, Mrs. Smith, after bathing and dressing this little child, took him to the front porch of her home where she left for a few minutes while she went to the kitchen to put some grits on the stove. The child was given a nickel and was left on the porch to wait for the ice cream vendor to buy an ice cream cone from the ice cream itinerant vendor, as he had done before. The father, Mr. Smith, had left for the meat market a short distance away to make a purchase before Mrs. Smith had placed the child on the front gallery. Leaving the child on the porch was certainly not negligence on the part of Mrs. Smith, as a parent is not negligent in permitting his child four years of age to be on the sidewalk ad-joining his residence. St. Charles Municipal Drainage Dist. vs. Cousin, 130 La. Ann. 333, 57 So. 992; Westerfield vs. Lewis Bros., 43 La. Ann. 63, 9 So. 52.

Defendant company contends that Mrs. Smith was absent from the child about ten or twenty minutes, the plaintiffs contend that she was not away from him over five or six minutes.

In the case of Fox vs. Texas Oakland Consolidated Street Railway Company, 118 Cal. 55, 50 Pacific Reporter, p. 25, 62 Am. St. Rep. 216, a child four and one-half years of age was killed on Franklin Street by a car of defendant railway company. The father was away from home at the time, one of the daughters who lived with her parents was attending school, and the other was engaged in washing clothes with her mother on the back porch of the house. The child was obedient, as was the case here, and had been admonished not to go on Franklin, the forbidden street, and had so been advised about 15 or 20 minutes before the accident. The Court held that the conduct of the mother did not constitute negligence per se. Here, the child had been placed on the gallery where it usually waited for the ice cream man to buy the cream cones. The father was away as in the case above cited, and so were two daughters, and a brother. It was shown that the child never left home alone; and, that although the parents knew of the existence of the excavation they had never given it a thought or considered it as a danger spot to children. Even if Mrs. Smith remained twenty minutes before returning to the porch where she had left her child, who, the evidence shows, was drowned during her absence, she was not guilty of negligence, nor was her husband because of his being away on an errand at the meat market. See also Sundmaker vs. Y. & M. V. R. R. Co., 106 La. 111, 30 So. 285, where the principle

therein recognized is in line with the ruling of the Court in the California case above cited. Counsel for plaintiffs say that the excavation where the water was at an average depth of three feet was dangerous and treacherous to children, who, in pursuit of their childish instincts would be naturally attracted to it. They assimilate this case to the one reported in Westerfield vs. Lewis Bros., 43 La. Ann. 63, 9 So. 52. In that case, it appears, that the defendants were leveling Coliseum Stret in New Orleans with heavy iron rollers to which two mules were attached; that one was left unattached, and the mules not hitched so as to prevent them from moving off with the roller. Richard, a boy of the plaintiffs, aged five years seven months, escaped from his home, got on the rollers, started the mules, was thrown and killed. It is apparent that the leaving of such heavy iron rollers attached to unhitched mules was a dangerous machine that would attract the instinctive curiosity of children with the probability of fatal results, which would suggest themselves to any person of ordinary prudence. This is not exactly the situation here. The fact is that the plaintiffs saw when the excavation was being dug out, saw it after it was made, and never thought for an instant that any danger lurked there for their child or for anyone else; also, that in the vicinity no one entertained any apprehension of danger from this pool of water. No complaint, the record shows, was ever made by plaintiffs, their neighbors or anyone else, about this excavation, to the water works company or the City of Baton Rouge, during the period it was there from May 18th to May 31st, when the child was drowned. It is obvious from the foregoing facts that plaintiffs and the people in their vicinity had not the least apprehension that a misfortune of the kind complained of would be likely to occur. It is but fair to say that defendant company must be considered as having likewise been equally unapprehensive. As a matter of fact the proof is that defendant had been making excavations of that character in the streets of the city for many years, and which had always been barricaded or protected in the way the one in question was. It also appears that during that long period of time, prior to the accident in question, not a single complaint was made to the company or to the city (which followed the same method of barricading) by any citizen of the city in reference to these excavations. It is also shown that not a single accident occurred to any child of the city or to anyone else from such excavations up to the time of the one under discussion. It was shown that when the dirt from the excavation is removed to some other place, and where the size of the hole makes it necessary, a plank is usually run, or a horse and rail. It is explained by Stewart, a contractor of long experience, that when a pool is barricaded in that fashion, there is nothing to keep a child or anyone else from getting into an excavation. The proof shows that this excavation when made was absolutely necessary to stop the leak in the main, to maintain the water service to the city, and sufficient pressure of water in the event of fire. It therefore appears clearly from the record that the excavation was essential, and had been made and barricaded as had been customary with defendant company and the city for a long period of time, that is, during seventeen years; and, in addition thereto, it was proved that a like method was followed in similar work by other public utility corporations.

In the case of Loftus vs. Union Ferry Co., 84 N. Y. 455, 38 Am. Rep. 533, the parents sued defendant for the death of their child, aged six, on account of the insuffi-

ciency of a guard on the side of a ferry boat through which the child fell into the water and was drowned. The boat had been in use for a period of about six years prior to the accident, and was similar in construction to the other ferries of defendant. It was possible in that case for defendant to have constructed the guard on that boat, that such an accident could not have happened and which could have been done without much expense and trouble. This is precisely the argument advanced here by plaintiff as to the absolute security against accident which could have been provided for in the construction of the excavation, and at a trivial expense. If, says the Court in that case, "the defendant ought to have foreseen that such an accident might happen, or if such an accident could reasonably have been anticipated, the omission to provide against it would be actionable negligence. But the facts rebut any inference of negligence on this ground. The company had the experience of years, certifying to the *sufficiency of the guards.*" Likewise, it can be said here, that the company had the experience of years, certifying to the sufficiency of the barricade. The Court in the case cited, then proceeds to say: "that it was possible for a child or even a man to get through the opening was apparent enough. But that this was likely to occur was negatived by the fact that multitudes of persons had passed over the bridge without the occurrence of such a casualty." Here, we cannot refer to multitudes or millions because the character of the case could not present such a situation, but the proof shows that *from* one, two or three excavations were dug weekly in various parts of said city, and for some seventeen years prior thereto, though as many a week during that period of time does not appear. If such pools were attractive to children, or were dangerous or treacherous as is contended

for by counsel for plaintiffs, it is indeed passing strange that not a single casualty of the character at issue ever occurred; and, still more singular is it, that not a single complaint was ever lodged with either the water works company or the City in reference to the danger of such excavations. Finally, the Court says the following, and which embodies the crux of the ruling, to-wit:

"We think the exemption of the defendant in this case rests upon the fact which, we think, clearly appears as an inference from the other facts, that the company had no reason to apprehend an accident like this, and that the arrangements made were such as experience had up to that time shown to be safe and suitable, and sufficient to meet the requirements of its duty. This doctrine applies with peculiar force to the facts of this case which show that the arrangements made by defendant company had proved sufficient to meet the requirements of its duty."

The principle above outlined was in a nebulous way recognized by our Court in Lopez vs. Sahuque, 114 La. 1004, 38 So. 810, where it said that the existence of a fact "without injury for a long time, with factors constantly present calculated to produce injury if really dangerous from those factors, would go far to do away with the anticipation of resulting injury." It is but fair to say here that the existence of these excavations in the City of Baton Rouge during a period of over fifteen years without any injury having resulted to anyone, and without even a single complaint or protest as to their dangerous or treacherous character being urged should go far "in doing away with the anticipation of resulting injury" on the part of defendant company. N. O. & N. E. R. Co. vs. McEwen & Murray, Ltd., 49 La. 1184, 22 So. 675, 38 L. R. A. 134, we find a more formal and positive expression of the principle under discussion in the syllabus, which is as follows:

"A mere failure to guard against a certain result is not actionable negligence unless, under all the circumstances, it might have been reasonably foreseen by a man of ordinary intelligence."

This doctrine resting on facts, constantly present, calculated to produce injury, but without causing any, should go far as was said in Lopez vs. Sahuque, 114 La. 1004, 38 So. 810, above cited, to "do away with the anticipation of resulting injury." It must also be observed in connection with the above principle, as was said in that decision that:

"Responsibility for injuries to children is broader when the result is from acts of commission than when they are the result of acts of omission, leading up to unexpected. unanticipated consequences. In the light reflected from the facts of this case which we have hereinabove stated in substance; if defendant company is really chargeable with the acts of omission of which plaintiffs' counsel complain, they certainly led up to and resulted in unexpected, unanticipated consequences."

Counsel for plaintiffs refer to the case of Palermo vs. Orleans Ice Mfg. Co., 130 La. 833, 58 So. 589, 40 L. R. A. (N. S.) 671, in which it appeared that a child of four years had fallen in a ditch containing hot water which was flowing from the plant of the defendant in that case. It was clearly shown in the case that the defendant was entirely aware of the danger that might befall children from the hot water which was running in that ditch, as it had placed a watchman to warn them of the danger and who deserted his post. Unquestionably, the casualty which resulted to the child had been anticipated and foreseen. There is no evidence of that character in this case. If defendant company herein, had placed a guard around the excavation in question to warn children of any danger, it is obvious that defendant would be chargeable with having foreseen and anticipated what

happened, and the principle we are invoking could not possibly have any application. Admitting as true what plaintiffs' counsel are contending for, that the proof shows children were attracted by the water in the excavation, still, it is undeniable from the facts of the case, that from the long period during which these excavations had been made without the occurrence of a single mishap, or complaint of any character, that in justice to defendant, it must be said, as was aptly said in the case of Loftus vs. Union Ferry, 84 N. Y. 465, 25 Cal. Am. Rep. 533, 38 Am. Rep. 533, as follows:

"We think that the exemption of defendant in this case rests upon the fact which we think clearly appears as an inference from the other facts, that the company had no reason to apprehend an accident like this, and that the arrangements made were such as experience had up to that time shown to be safe and suitable, and sufficient to meet the requirements of its duty."

The proof shows that boards were placed over the excavation immediately after the accident. Counsel for plaintiffs refer to this fact as proof that defendant had been negligent in only raising a barricade of dirt around the pool. W. P. Connell, president of the company, testified that prior to the accident it was never the intention of the company to protect the hole against children going into it. It was thought, he said, to protect it against traffic accidents. When this tragedy occurred, he testified he wanted to make it impossible for accidents of that kind to be repeated. In Biegel vs. City of N. O., 143 La. 1077, 79 So. 867, the Court said:

"Municipal corporations cannot foresee or guard against all dangers incident to the rashness of children, and are not the insurers of the lives or safety of children."

The defendant company was not required to so guard the pool in question as to

make all accidents impossible. If boards were placed over such excavations, it is doubtful, as appears from the evidence, if a danger could not have been created as to traffic by autos and other vehicles over the streets of Baton Rouge, thus showing the difficulty of making arrangements which would protect all the individuals of the city.

In conclusion it may be proper to remark the case must be determined on the conditions which existed at the time of the accident in the light of the facts, circumstances and experience which had influenced the conduct of the defendant when the excavation was made. It is under such a test that the issue of negligence or no negligence must be solved. The criterion is not as to the possibilities of danger which were disclosed by the accident but which could not have been reasonably foreseen, expected or anticipated wherein lies the crux of the issue here presented. For the foregoing reasons we are constrained to reserve the judgment, which is therefore avoided and reversed, and the demand of the plaintiffs is hereby rejected at their cost.

LECHE, J., concurring. The opinion prepared by my colleague, Judge Mouton, apears to me to be sound, logical and to contain a lucid exposition of the law applicable to this case. In Biegel vs. City of N. O., 143 La. 1080, 79 So. 867, cited in the opinion, Justice O'Niell said:

"The duty of municipal corporations to keep the streets in a condition of safety to the public has been extended very far in some jurisdictions; in fact to the limit, where we think more consideration must be given to that regard which each individual should have for his own safety. It is true, an infant under four years of age is not to be blamed for negligence; but

as a corollary, municipal governments cannot foresee and guard against all the dangers incident to the rashness of children. Municipalities are not insurers of the lives or safety of children. The municipal authorities have the right to presume that, for every child under the age of discretion, there is some one of mature judgment on whom rests the special duty and responsibility for the safety of the child."

Although the defendant in this case is not a municipality, it is a public service corporation, and its functions are municipal in their nature, are performed under municipal authority and its rights and responsibilities are no less and no greater than if the work which it has assumed to perform was done by the City of Baton Rouge itself. The law as announced in the Biegel case, fits the present one like a glove, made according to measure.

I therefore fully concur.

ELLIOTT, J., dissenting. The facts in this case are not disputed. The defendant water works company excavated a hole in Julia Street near St. Joseph Street in the City of Baton Rouge, about eight feet long, four and one-half feet wide and about three feet deep, and left it open and uncovered. The dirt dug out of the hole was piled around it, forming a barricade from sixteen inches to two feet in height and wooden benches called horses placed on each side up and down the street, from which red lanterns were hung at night. The hole was full of water. It was filled presumably very soon after it was dug by the water escaping and running from the main in which a leak had developed, and remained full the entire time it was there. A stream of water ran from the hole into the nearby gutter, through an opening for that purpose left in the barrier. This drain prevented the

water in the hole from rising to the top of the barricade, and kept it down even with the surface of the street. This hole was left in this condition for twelve or thirteen days.

Plaintiffs' son, two and one half years old, got into it and was drowned.

The children in the neighborhood had discovered it some days previous to the accident, as some of them were seen playing there, but plaintiffs' child was not permitted to play on the streets, not go on them unattended, and it was never seen at the hole until it was found in it, shortly after it had been drowned.

It is conceded in the opinion that a child two and one-half years old cannot be guilty of negligence, and that plaintiffs, its parents, were not guilty of contributing to its death by leaving him alone for ten or twenty-five minutes on the porch of their home, with a nickel in his hand with which to pay for an ice cream cone, which a vendor was in the habit of selling to children as he passed along the street. This holding that such an act was not negligence on the part of the parents is supported by Westerfield vs. Lewis Bros., 43 La. Ann. 63, 9 So. 52; Palermo vs. Orleans Ice Mfg. Co., 130 La. Ann. 833, 58 So. 589, 40 L. R. A. (N. S.) 671; Sundmaker vs. Y. & M. V. R. Co., 106 La. 111, 30 So. 285.

But the Court takes the position that the judgment appealed from is erroneous because the parents saw defendant's employees digging the hole and were not apprehensive of danger from what they saw being done; but mainly, because the defendant water works company had, for the past seventeen years or so, been excavating holes in the streets and leaving them open and uncovered with a dirt barricade and a horse on each side from which red lanterns were hung at night, as the only protection, and during which time it was said that no accident had ever happened before. The Court concludes that the same thing had been done so long without accident, that therefore the drowning of plaintiffs' son was not an occurrence which should be attributed to defendant's negligence in leaving the hole uncovered, and in not foreseeing an accident of the kind to children and providing against it. That defendant was therefore not liable in damages on account of the occurrence in question.

I contend with respect, that the conclusion of the Court on that subject, is erroneous as a matter of law.

The barricade of dirt and the two horses amounted to nothing as a protection for children. It was easy for them to climb over the dirt barricade. The cases of N. O. & N. E. R. Co. vs. McEwen & Murray, Ltd., 49 La. Ann. 1184, 22 So. 675, 38 L. R. A. 134; Lopez vs. Sahuque, 114 La. 1004, 38 So. 810, and Loftus vs. Union Ferry Co., 84 N. Y. 455, 25 Cal. 533, 38 Am. Rep. 533, cited in support of the conclusion, were not based on similar situations. A hole of the kind involved in the present case, is, in my opinion a nuisance, and as to children two and one-half years old, dangerous per se. And the danger increased each day of the twelve or thirteen it was left open, in proportion as its presence became known to the children in the neighborhood. This hole could have easily been covered over and made safe. It was done the next day after plaintiffs' son was drowned. It should not have been left unguarded and uncovered a single day.

I disagree with the Court that the defendant did not foresee the danger. The possibility of children too young to appreciate the danger of drowning, and too weak to extricate themselves in case they fell into it, was necessarily foreseen. No

prudent or thinking man could help being aware of it. Biegel vs. City of N. O., 143 La. 1078, 79 So. 867, cited by defendant, rests on a different principle. In that case a child fell into an open gutter which ran under a culvert. A heavy rain had fallen and filled the gutter with a strong current of water, which carried the child under the culvert, where it was drowned before it could be rescued. The theory of the plaintiff in that case, was that the city should have foreseen and provided against an occurrence of the kind by placing a grate at the end of the culvert. The Court held in effect that the occurrence was one which the city could not be expected to have foreseen. In Lopez vs. Sahuque, 114 La. 1006, 38 So. 810, a mother saw her child playing in a cart with other children. She did not call her child to come away, because she did not see any danger there. A city ordinance existed against carts being left in the streets. The Court held that the cart was not dangerous per se. That it only became dangerous, because the other children had tilted up the body in their play, which, falling, struck plaintiff's child on the head. That the circumstance of the danger was remote from the accident, and was not foreseen by the owner of the cart.

In this case the defendant water works company is charged with knowing that this hole which it excavated in the street and left open and uncovered was full of water, deep enough to drown children, was in fact attractive to children and dangerous per se. The stream flowing out of it into the gutter was an additional attraction.

Dangerous holes excavated in streets and sidewalks, when left open and uncovered have always been classed as nuisances, dangerous per se.

Westerfield vs. Lewis Bros., 43 La. Ann. 63-64, 9 So. 52, is a case in which a machine, capable of doing great harm to children if set in motion, was left on a street near a residence unguarded. A boy five years old slipped out of the house and got on it, and got it in motion, and was thereby killed. The legal questions involved in the case were closely considered. Two of the Justices dissented from the majority finding on the facts, but not from the legal principles announced. One of the illustrations used in stating the principle applicable to dangerous things attractive to children, left unguarded, quoted from Wharton on Negligence, was as follows, p. 71 of 43 La. Ann. (9 So. 56):

"Supposing however, a well is left open or machinery exposed and a child is thereby damaged. Again we say, notwithstanding the high authority to the contrary, that the negligence of the child's parents has nothing to do with the issue. That issue is, was it negligence to leave the well or machinery exposed? And this issue must be determined by the test whether such exposure is consistent with the mode of action of a prudent and skillful business man."

In Cline vs. City R. Co., 43 La. Ann. 327, 9 So. 122, 26 Am. St. Rep. 187, the cause of action was a death resulting from a hole in a street, left uncovered and unguarded. The Court, referring to the liability of the defendant, said page, 334, 43 La. Ann. (9. So. 125):

"But even if the driver had seen the hole and had not avoided it, nothing shows that he knew of its dangerous character."

In this case, plaintiffs did not examine the hole. They did not know it was full of water. It was to them an unknown danger to which their child was exposed.

Buechner vs. City, 112 La. 599, 36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455, was a damage suit on account of the drowning of a boy between eight and nine years old. The boy fell into a canal through a hole in a bridge. The Court referring to the cause of action, said:

"The defendant is charged with negligence in not keeping the bridge in a safe

condition and especially in permitting a dangerous hole in one of the passageways to remain open so long." And approvingly quoted from Beach on Negligence, as follows: "Even adults have the right to presume that a public passage-way is safe, and are not negligent for not looking for unlawful obstructions."

In Rock vs. American Construction Co., 120 La. 831, 45 So. 741, 14 L. R. A. (N. S.) 653, the Court said:

"As a municipal corporation would itself be liable to a citizen for injury sustained by reason of its reducing a sidewalk to a dangerous condition, it is evident that the privilege granted by such a corporation to a public untility company, of making excavations for a sidewalk, cannot authorize such company to leave the excavations so made unguarded, and to dispense with all precautions, whereby those who are rightfully using the sidewalk may be warned of their existence. Nor can the company in such case escape liability on the plea that an excavation made under the authority conferred on it and for its account and benefit, has been made by an independent contractor."

Gueble vs. Town of Lafayette, 121 La. 909, 46 So. 917, is to the same effect. In Allen vs. Town of Minden, 127 La. 403, 53 So. 666, the syllabus reads in part:

"It is negligence for a town making repairs to leave a pit in a public street with no railing around it, nor any lights or danger signs to warn people using the street. The town in making repairs to its streets, must use due care not to endanger the life, limb or property of anyone. * * *

"A municipality making excavations in a public street is held to the same degree of care to prevent injury to any individual and the public has a right to believe that a municipality will not expose them to danger and that it will do everything to make their passage along public streets reasonably safe."

In Palermo vs. New Orleans Ice Mfg. Co., 130 La. 833, 58 So. 589, cited in the opinion herein, the syllabus reads in part:

"Where a child four years old fell into a street gutter containing hot water, which had flowed from defendant's plant, and was painfully burned, the defendant will be held liable in damages where the evidence shows that the water and steam attracted the curiosity of the children in the vicinity, and that the defendant's watchman at the gutter had left his post before the accident happened to the child."

The opinion in the present case, commenting on the case just cited, says that the defendant was aware of the danger, and had placed a watchman there to guard it, but that he had deserted his post. That in the present case, there is no evidence of that character. That the long period of time during which these excavations had been made and barricaded without the occurrence of a single mishap, indicates that the arrangements made by defendant in this instance, was sufficient, etc. The Court mistakingly overlooks the fact that the evidence in this case does not show that the excavations made by defendant in the past were left full of water deep enough to drown children, and from which a stream was flowing. The witnesses did not say whether they were full of water or not but if such had been the case and children lived in the neighborhood, instances would have occurred almost sure, just like that which happened to plaintiffs' child. In Burk vs. Werlein, 143 La. 788, 79 So. 405, the first clause of the syllabus reads:

"An excavation in a public sidewalk is intrinsically dangerous and is a nuisance, and one who causes it to be made, owes an absolute duty to protect the public from injury that may result therefrom, and cannot escape liability for such injury by showing that the excavation was made by a person, who, though engaged by him to do so, acted as an independent contractor."

So, the fact that the defendant water works company has been excavating holes in the streets of the City of Baton Rouge for the period of time claimed, and barricading them in the way stated, and leav-

ing them uncovered for as long as the one in the present case was left open, without a single accident occurring, is not ground, in my opinion, for acquitting the defendant of negligence in this case, because the evidence does not show that the holes in the past were left full of water deep enough to drown children, and that a stream of water was running out of the hole into the gutter, some four or five feet away. And as the defendant excavated and left this hole in the condition stated, it is legally charged with knowing what is known to everybody, that it would attract children, and that as to those too young to appreciate the danger of drowning and too weak to extricate themselves should they fall into it, it was a nuisance and dangerous per se. And to my mind defendant's act was one of inexcusable negligence, and having caused plaintiffs damages in the way alleged, it is responsible to them accordingly.

The judgment appealed from, is, in my opinion, correct and should be affirmed.