## BROWN v. WADE. *

### No. 4397.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 6, 1933.

---

*Rehearing denied March 10, 1933.

Hugh M. Wilkinson and Fred W. Oser, both of New Orleans, for appellant.

A. V. Hundley, of Alexandria, for appellee.

## TALIAFERRO, J.

This is an action in damages by the mother of a little girl, three years and ten months of age, who was struck and injured by an automobile operated by defendant, on the highway near the Poland High School, in Rapides parish, on March 7, 1930, from which injuries, superinducing pneumonia, she died one week later.

Plaintiff alleges that the accident, resulting in the injury to and death of her child, was due solely to the gross negligence and carelessness of defendant in the operation of his automobile at an excessive rate of speed on the highway, and for that reason being unable to stop the car in time to avert the accident after observing the child's purpose 'to cross said highway ahead of him.

Defendant denies negligence of any kind on his part; and, in the alternative, pleads contributory negligence on the part of plaintiff in permitting her young child to go unattended upon a through highway, where automobile traffic was frequent and rapid.

From a judgment against him for $2,500, defendant has appealed.

At the time of the accident, plaintiff was living in the city of Alexandria. She and her husband had separated. She had left her little girl in the keeping and charge of her brother, a negro tenant on the farm of Mr. A. T. Ryland, where the accident occurred. The house occupied by this brother is on the east side and fronts the graveled highway from Alexandria to Marksville. The child had left this house, unattended, and had passed through a wagon gate, crossed a bridge that spans the highway ditch, and was crossing the highway diagonally in its desire to join some children at the home of another tenant, north of and on the opposite side of the road from the place from which it had come. When near the middle of the road, defendant's car either ran into the child or side-swiped it in passing, or the child ran into the right side of the car. The evidence does not make it clear in which way the contact was made.

Defendant had been to Marksville and was returning to his home in Alexandria. When passing the Poland High School, about three-fourths of a mile south of the site of the accident, he was hailed by a young man by the name of James Goodwin, who wished a ride to Alexandria. Defendant consented and Goodwin was in the car when the accident happened. North and south of the site of the accident, for several hundred yards, the road is straight and the view unobstructed. From the wagon gate to the gravel of the highway is thirteen feet, and this location is unobstructed to the view of one approaching from the south. The graveled portion of the highway is at least twenty feet wide.

There is considerable evidence in the record touching the rate of speed at which defendant's car, a Buick sedan, was moving immediately preceding the accident. The accident occurred one hundred yards north of Mr. Ryland's store and filling station. He testified that defendant passed him one hundred yards south of his place of business, traveling at a very rapid rate of speed; that he (Ryland) was driving at the rate of thirty-five miles per hour, and while he covered one hundred yards, or about, to his store, defendant had covered this distance, plus the additional one hundred yards or more, to the point of accident. Other witnesses corroborate Mr. Ryland's testimony about defendant's rate of speed. The attention of two witnesses, over five hundred feet distant, was attracted to the Buick car, on account of the loud, roaring noise it was making. The Goodwin boy thought defendant was making between thirty-five and forty miles per hour when the child ran into the road. He was certain the speed was not over forty-five miles per hour. Defendant was positive he was not traveling sixty miles per hour at any time, but that his rate was from thirty to thirty-five miles, as he proceeded northward.

■ It is not necessary to definitely determine the rate defendant's car was traveling. We think, however, he was going at a rapid rate. We do not think his liability turns upon the velocity of his car, primarily. Liability was incurred by his action, or nonaction, after observing the movements of the child on the bridge and road. Defendant admits he saw the child first when it was on

the bridge, running towards the road, and he says he was then seventy-five feet from her. He then lightly applied his foot to the brakes and pulled the car a little to his left, towards the center of the road; that the child turned to its right and continued running up the right side of the road a short distance, and he then released the brakes and continued to travel at about thirty miles per hour until he saw that the girl had turned diagonally across the road in the path of his travel, still running; that he then cut his car obliquely to his left and applied the brakes forcefully. He is positive the front of the car cleared the child and that it ran into the car towards its rear end. The car was then pulled to its right to avoid going into the ditch, and finally stopped, nearly all of the witnesses agree, about ninety yards up the road. The child's body was picked up about the center of the road.

Defendant does not know if he sounded the car's horn, after seeing the child, or not. His testimony leaves the impression that he did not do so—at least, that he did not think he did so. One witness said the horn sounded once. Others said the horn was not sounded at all.

Defendant admits that he could have stopped his car, or brought it under control, within the distance he was from the child when he saw it running across the bridge. He chose to continue up the road, gaining on the child, as it ran, assuming that it would continue its course until he had passed it. He was on the right side of the road and so was the child. The legal questions presented by this state of facts are: Did defendant's action amount to negligence? Could he have, by the exercise of reasonable care, averted the accident? The evidence, we think, clearly answers these questions in the affirmative.

When the operator of an automobile discovers the presence of small children on the roadside, ahead of him, it is his duty to travel at such a rate of speed, and bring his vehicle under such control, that an accident will be averted, regardless of the unexpected and unforeseen movement of any of the children. He has not the right to assume that a child, especially one of tender years, will exercise discretion needed to protect it from the dangers of rapid automobile traffic.

We are not now dealing with a case, as often happens, where a child suddenly emerges from hiding, or from behind an obstruction to vision, and precipitates itself in front of a moving vehicle, thereby creating a sudden emergency. We are dealing with a case wherein the defendant admits that, after seeing a small child, less than four years old, running towards the road and then turning up the road, still running in the direction the car is going, he took little or no precaution to avoid what could or would happen should

that child, in the exercise of its childish indiscretion, seek to resume its original course by attempting to cross the road. Under these conditions, it is immaterial whether the car was running sixty miles per hour or thirty miles per hour. The accident happened and defendant contends his speed was not over thirty miles per hour. Regardless of the rate of speed, he was unable to avert an accident which he knew, or should have known, would happen if the child he saw in front of him should suddenly change its line of travel to the left. The action of the child should have indicated to the defendant that its intention, when it ran to the highway and turned up, was to cross over to the tenant house a short distance away—its subsequent action proved this intention. He should have brought his knowledge of the nature and disposition of children of this age to bear, and governed himself accordingly. Defendant had ample opportunity, even from his own appreciation of the situation, to have so manipulated his car as to make it impossible to collide with plaintiff's child.

Berry on Automobiles (6th Ed.) p. 435, under the title Injuries to Children, lays down the general principle applicable, we think, to a case of this character, viz.:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them, must calculate upon this and take precaution accordingly.

"While a child may know that if, as a consequence of his attempt to cross a street, he is struck by an automobile, he will likely be seriously injured, he may not know that he will likely be struck by an automobile as a result of his attempt to cross the street in the conditions confronting him at the time. A child has not the knowledge and the experience to know or estimate correctly the probable consequences of his acts in a given instance."

Huddy's Cyclopedia of Automobile Law (9th Ed.) vol. 5-6, § 41, sets forth the rule to be as follows:

"A motorist seeing children walking along the roadway in front of him must exercise care not to injure them. He must give warning of his approach, and keep his car under control. Care should be taken to avoid collision in case a child walking along the side of the road should turn to cross ahead of the car."

In Negligence and Compensation Cases Annotated, vol. 8, pp. 376, 382, in the case of Deputy v. Kimmell, 73 W. Va. 595, 80 S. E. 919, 920, 51 L. R. A. (N. S.) 989, Ann. Cas. 1916E, 656, it is said:

"The vigilance and care required of the operators of an automobile vary in respect of persons of different ages or physical conditions. He must increase his exertions in or-

der to avoid danger to children, whom he may see, * * * on or near the highway. More than ordinary care is required in such cases."

The facts of the case of Jacoby et ux. v. Gallaher, 10 La. App. 42, 120 So. 888, are very much like those of the case at bar. In that case, Judge Westerfield reviews at length the jurisprudence of this state and cites several decisions from other jurisdictions applicable to the principle involved herein. Part of the syllabus of that case, which we think correctly reflects the prevailing rule is as follows:

"Automobiles—Motorist must give warning to pedestrians on highways in country of his approach, and keep his automobile under control."

"Automobilist must exercise greater care where there are children in roadway than is necessary in case of adults."

"Automobilist having in view children walking along highway, but not sounding horn or checking speed, held negligently liable for death of child running across path of automobile."

The case of Miller v. Compton, No. 1791 on the docket of this court, decided in February, 1923, before publication of the decisions began, is strikingly similar to the instant case. That case is not, perhaps, as strong for plaintiff as the case at bar because the child injured by defendant was running across a street in the city of Alexandria when struck by his car. In the course of that decision, Judge Porter, the organ of the court, says:

"This is not a case where a child runs in front of an automobile from a place where it was not seen, or could not, with reasonable care have been seen by the driver. The defendant saw the child coming to the corner of the street, saw it pause there, and, according to his own statement, realized the danger which would result if it attempted to cross the street. It appears from his testimony that he got his machine under control, and then, assuming that the child, because it looked at him, would not attempt to cross, he speeded up to ten or eleven miles, thereby making it impossible to avoid striking the child if it did start across the street. He says that after the child looked at him, he took it for granted that she would not attempt to cross.

"All of the actions of the child, as seen by the defendant, clearly indicated its purpose to cross the street, and he had no right to assume that, because it paused a moment at the curbing, it had abandoned that purpose."

An early case, after the motor vehicle became somewhat generally in use, is that of Albert v. Munch, 141 La. 686, 75 So. 513, L. R. A. 1918A, 240. The syllabus there reads:

"Municipal Corporations—Use of Street—Operation of Automobile—Prevention of Injury.—A person who drives so dangerous a machine as an automobile through the principal street of a large city, upon a bright, dry day, and who sees, at a distance of 150 feet in front of him, two boys, ages 10 and 12 years, respectively, trailing in a soap box wagon behind an ice wagon, should take such precautions in his driving as that, in no event or situation, conceivable to an intelligent man, will he run over and kill the boys."

The rule announced in the above-mentioned cases has been extended to railroads operating trains through populous cities. In Ryan v. Louisiana Railway & Navigation Company, 146 La. 40, 83 So. 371, the rule, embodied in the syllabus, is stated to be:

"It is the duty of trainmen to keep a reasonable lookout for children, especially in a city, and failure to do so constitutes negligence."

"Trainmen have no right to assume that a child of tender years, running toward the tracks, will stop before crossing."

"A lookout or flagman has no right to assume that a child of tender years, approaching a crossing, will see the signals, or appreciate the perils of his position, or remain in the place of safety, and failure to signal the train to stop or to remove the child from his perilous position is negligence."

Defendant has cited and quoted from the syllabi of some twenty-five cases decided by the Supreme Court and the Courts of Appeal of this state, involving actions for damages on account of the death of or injuries to children, caused by motor vehicles. We have given consideration to practically all of the cited cases, and find that each of them may be easily differentiated, as to facts, from the instant case. Nearly all of these cases arose from accidents occurring in cities. The rules laid down in such cases, as applied to children traveling on city sidewalks, is different from those applicable to children traveling on the roadside of rural highways. In the first case, the operator has the right, as a rule, to assume that children will remain on the sidewalk, which is exclusively dedicated to pedestrians, and not suddenly attempt to cross a street nor adapt it for the uses to which the sidewalk was intended; whereas, all parts of a country highway are, to the knowledge of everyone, used in its entirety by pedestrians, as well as by vehicles. We think the correct rule, governing cases where the facts are as we find them to be in the instant case, is enunciated in the decisions we have cited and quoted from.

We do not think there is any merit in defendant's plea of contributory negligence. In the country, it is common knowledge that children of tender age play upon the highways, and go from place to place on the road and in the neighborhood of their parents, unattended. Defendant has not argued this plea in brief nor cited any authorities sustaining

the position taken in his answer. It is not shown that plaintiff's brother, nor any one of his household, knew of the child's absence from his home. The child itself was incapable of being contributorily negligent.

The cases of Ford v. Chicago, Rock Island & P. Railway Company, 8 La. App. 584, and of Smith v. City of Baton Rouge, 9 La. App. 19, 119 So. 98, and cases therein cited, are authority for overruling this plea.

Defendant complains that the judgment in this case is excessive, and urges us to reduce it to $500, should we find defendant liable to any extent. Our attention is directed to the award of damages, and the facts, in the following cases, viz.:

1. Stephenson v. N. O. Ry. & Light Co., 7 La. App. 356.

In this case, brothers and sisters sued for the death of a sister thirty-eight years old, and were given $2,500. It is said in this opinion that: "In computing damages where the question of financial loss is not present, each case must necessarily be considered separately. All of the facts and surrounding circumstances have a direct bearing on the amount of the award." This case, on the question of liability, was reversed by the Supreme Court in 165 La. 132, 115 So. 412.

2. Ford v. Chicago, R. I. & P. Co., 8 La. App. 584.

The child killed by defendant, in that case, was thirteen years old and had been committed to the custody of another person to rear. The award of damages to the father was $2,000.

3. Giangrosso v. Schweitzer et al., 10 La. App. 777, 123 So. 127.

In that case, plaintiffs, the mother and father of a seven year old child, recovered judgment for $2,000 for its death.

4. Vuillemot v. August J. Claverie & Co. et al., 12 La. App. 236, 125 So. 168.

In that case, the father recovered $3,000 for the death of his daughter, a young lady.

The question of the proper quantum of damages to award for the death of a child is always one of much difficulty for a court. In determining this question, the age of the child and the station in life of the parent are pertinent factors to consider.

If we should be controlled by the cases cited in defendant's brief, we would say that the judgment is excessive; but there are numerous cases in our reports wherein amounts ranging from $2,000 to $6,000 have been awarded to parent or parents for the death of a child. Many of these are cited in Jacoby v. Gallaher, 12 La. App. 477, 126 So. 86, and are as follows: Sundmaker v. Y. & M. V. Ry., 106 La. 111, 30 So. 285; Ortolano v. Morgan's L. & T. R. & S. S. Co., 109 La. 902, 33 So. 914; Buechner v. City of New Orleans, 112 La. 599,

36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455; Cherry v. L. & A. Ry., 121 La. 471, 46 So. 596, 17 L. R. A. (N. S.) 505, 126 Am. St. Rep. 323; Roby v. K. C. S. Ry., 130 La. 896, 58 So. 700, 701; Sutton v. Champagne, 141 La. 469, 75 So. 209; Albert v. Munch, 141 La. 686, 75 So. 513, L. R. A. 1918A, 240; Patton v. Frost-Johnson Lbr. Co., 142 La. 117, 76 So. 580; Hebert v. Baton Rouge Elec. Co., 150 La. 957, 91 So. 406, 25 A. L. R. 245; Aymond v. Western Union Tel. Co., 151 La. 184, 91 So. 671; Duffy v. Hickey, 151 La. 274, 91 So. 733; Williams v. Missouri Pacific Ry., 155 La. 349, 99 So. 286; Smith v. City of Baton Rouge, 166 La. 472, 117 So. 559.

We have found no case where less than $2,000 was given to a parent for the negligent killing of a child. In the greater number of cases, more than this amount was awarded.

In view of the jurisprudence on this question, we do not think the amount excessive, and the judgment of the lower court in this case is affirmed.