No. 10,698.

SAMUEL E. MOORE VS. THE EDISON ELECTRIC ILLUMINATING
COMPANY.

In order to recover damages for injury sustained, it is necessary to show that the same was caused by the fault of the party from whom indemnity is claimed.

A traveler is presumed to know the use of a seat from that of a window. The former is to sit in, the latter to admit light and air. The seat he may occupy, the window he can enjoy, not occupy. It is negligence to put out his limbs, when they ought not to be, and expose them to be broken without his ability to know whether there is or was danger approaching.

A person is answerable for his negligence only so far as it is the natural and proximate cause of the injury, and not when the consequences arise from a conjunction of his fault with circumstances of an extraordinary nature.

A passenger who, in the night time, puts his head out of a window to ascertain the color of the car and identify it, whose head is bruised and who is much injured, must show, to recover, that he had a legitimate and *pressing* object in view, which could not be otherwise accomplished, and that his head struck against an obstacle which the defendant company had no right to place where it was when the accident occurred, knew to be dangerous, gave no warning, and negligently kept there.

If, in projecting his head out of the window, he sustain injury, he has no one to blame but himself for his rash act. He should have applied to the driver for information. Had he used ordinary care and prudence, the injury would never have happened.

APPEAL from the Civil District Court for the Parish of Orleans.
Ellis, J.

*Harry H. Hall* and *H. G. Morgan* for Plaintiff and Appellee:

1. "It is not negligence *per se* for a passenger to expose his hand or arm outside of a street car." 5 Mo. App. 471; 6 Cent. L. J. 335; 41 Cal. 109; 17 Wis. 487; 39 Mo. 468; 52 Mo. 283; Am. and Eng. R. R. Cases, 37, p. 166; 51 Ills. 333.

2. "While there is a difference of opinion as to whether a passenger upon a steam railway train is guilty of negligence as a matter of law in riding with his arm projecting from the car window, this has never been asserted of a passenger upon a street railway in a similar position. It is evident that there is not the same reason for the rule." Thompson on Carriers of Passengers, p. 446, and authorities there cited; V. Summers, R. R., 34 An. 146.

3. "If the injured person had no actual knowledge of the danger that threatened him, and if in the exercise of ordinary care under the circumstances, he would not have apprehended such danger in time to have avoided the consequences of defendant's negligence, he can not be charged with contributory negligence. It follows that there must be knowledge of the danger or sufficient reason to apprehend it, to put a reasonable and careful man on his guard, or there can be no contributory negligence." American and English Encyclopædia of Law, vol. 4, b. 34, and authorities there cited; Thompson on Carriers, 446; 145 Mass. 541, 569; 51 Ills. 333; 23 An. 464; 34 An. 146; 70 Penn. St. 86.

*Carroll & Carroll* for Defendant and Appellant:

Poles being required for the business carried on by telephone, telegraph and electric light companies, necessary in all modern cities, and locations for such poles having been assigned by competent authority, a person who injuries himself by running against a pole so located, has no claim for damages even if he be free from fault. In this case. defendant's pole, located by the city surveyor, being no nearer to the car lines than other poles, trees and structures in the city, was properly and legally placed, and defendant is not to be blamed if plaintiff has injured himself by running against it. It is a case of *damnum absque injuria.* See Sutherland on Damages, Vol. 1, p. 3; Wharton on Negligence, Sec. 25.

An action will not lie for damages resulting from a lawful act. Defendant is not at fault and should not be condemned. Donovan vs. City of New Orleans, 11 An. 711; Barbin vs. Police Jury, 15 An. 559; Koelmel vs. Railroad Co., 27 An. 442.

The evidence shows that the direct cause of plaintiff's injury was his own act in projecting his head from the window of a moving car to ascertain its color, when there was no necessity or occasion for such an unusual or unheard of act, plaintiff being able to inform himself by inquiring from the car driver, or any of his fellow-passengers. Plaintiff was guilty of contributory negligence, and consequently should not recover, whether defendant is at fault or not. Wharton on Negligence, Sec. 300; Hill vs. Railroad Co., 11 An. 292; Knight vs. Railroad Co., 23 An. 462; Mercier vs. Railroad Co., 23 An. 264; Hanson vs. Railroad Co., 38 An. 111.

A traveler who sustains personal injuries by reason of allowing his arm or elbow to be outside of the window of a car can not recover damages. Laing vs. Colder, 8 Penn. St. 479; Wharton on Negligence, Sec. 361; 3 Allen, 18; 7 Allen, 207; 29 Ind. 85.

A party from whose negligence an injury to himself flows in ordinary and natural sequences can not recover from a party whose negligence contributes to the injury. An intoxicated person, or a person driving recklessly, can not recover for an injury caused by a collison with an object negligently on the road, because, in the usual course of events, a person who is drunk or drives recklessly, precipitates himself against whatever is in his way; and, as something in an ordinary drive will be in his way, the question of defendant's negligence is immaterial. Wharton on Negligence, Sec. 332; 11 East. 60; 12 Q. B. 445.

The decision in Summers vs. Railroad Company, 34 An. 139, can not avail plaintiff, because, in that case, Summers was allowed to recover solely on the ground that, in allowing his elbow to slightly project beyond the car window, he was following the established custom in New Orleans; while in this case the plaintiff shows the existence of no custom tending in the direction of the act committed by him. On the contrary, by his own admission, he never knew any other person to act as he did, and the evidence is overwhelming to the effect that passengers are not in the habit of projecting their heads and bodies from moving cars.

Even if defendant be liable, the evidence shows that the damage sustained was but trifling, and, if any amount be allowed, the sum of $200 would be liberal. See Tucker vs. Railway Co., 42 An. 114; Van Amburg vs. Railroad Co., 37 An. 650; Myham vs. Louisiana Co., 41 An. 964; Moses vs. Railroad Co., 39 An. 649; Rutherford vs. Railroad Co., 41 An. 793; Maher vs. Railroad Co., 40 An. 64; Barnes vs. Beirne, 36 An. 280; McGuire vs. Ringrose, 41 An. 1029; Montgomery vs. Koester, 35 An. 1093; Hudson vs. Railway Co., 38 An. 111; Sullivan vs. Railroad Co., 39 An. 800; Yates vs. Louisiana Co., 40 An. 470.

The opinion of the court was delivered by

BERMUDEZ, C. J.   This is a suit to recover $15,000 damages for injury sustained in consequence of the alleged negligence of the defendant company.

The petition avers that the company planted a pole at the corner of Royal and Canal streets, in this city, in dangerous proximity to the Canal, Coliseum and Upper Magazine street line of cars, thereby illegally obstructing the same as a highway; that on June 8, 1888, petitioner, at about midnight, entered one of the cars of that line, and, believing he had not taken the one he intended to, he put his head a few inches out of one of the windows to identify the car by its color; that, at that moment, the car was passing the pole in question; that his head was caught and jammed between it and the upright frame of the car window; that his head was badly mashed and injured, and his forehead disfigured for life; that he was incapacitated thereby, for many weeks, from earning his livelihood, suffering great physical and mental pain; that defendant had full knowledge of the dangerous proximity of said pole, permitted it to remain where it was, after such knowledge, and did not notify the public.

Certain exceptions were filed, which were overruled, and followed by answer which contains a general denial and the averment that the pole was lawfully placed where it stood; that the location thereof was directed and authorized by municipal authority; that it was not on a public highway; that the damage was not due to defendant's fault or negligence, but wholly and entirely due to the plaintiff's own imprudence and carelessness.

The case was tried by a jury, who returned a verdict for $750, on which judgment for as much was rendered.   After a fruitless motion for a new trial, the company appealed, and is met with a prayer for an amendment, with an increase, to the full amount claimed.

The salient facts established by the record are the following:   .

On the 8th of June, 1888, the plaintiff closed his store between 8 and 9 in the evening, and, in the company of a friend, went down town, to buy a hat.   Finding the hat store closed, they went around, stopping at a saloon, where they took some beer.   They afterward jumped into a car, on Canal street, to return home.   Supposing he had not entered the right car, plaintiff, remaining seated, merely turning his head, put it out, three to four inches.   It struck against

a hard substance.   He cried out, "I am cut."   There was a wound on his forehead, and some bleeding followed.   He was taken to a drug store, removed to the Charity Hospital, where he was taken care of, and thence, in the morning, he returned home.

It appears that he suffered for a while, and that a scar will proba-bly remain on his forehead, to wear away in the course of time.

The proof also shows, that the pole referred to was placed where it stood with the authority of the city; that it had a basis of about fourteen inches, and was eight inches from the car, measuring from the bottom of the window through which the plaintiff passed his head.

It would be unnecessary, and therefore cumbersome and tedious, to go into further details in relation to the surrounding circum-stances of the accident, as enough has been stated to determine the issues between the parties.

There can be no doubt that the plaintiff was hurt, and suffered in consequence; but from that fact it does not necessarily follow that the defendant company must be held to indemnify him, for it is clear that the company can be so held, only, if it was the cause of the injury sustained.

There is nothing to show that plaintiff's head was caught between the pole and the car window, and, in consequence, was mashed and injured; for plaintiff himself declared that he did not put his head out more than *three* or *four* inches, merely turning his head; and the plan made, showing how the pole stood, and in evidence, indi-cates that it was at *eight* inches from the car window.

There was, therefore, a space of some *four* to *five* inches between the head of plaintiff and the pole, and it is more than a truism that bodies do not meet, as long as there exists an intervening space between them.

Such being the condition of things, as proved by the plaintiff and the evidence introduced by him, how can it, with any degree of se-riousness, be affirmed, that his head was caught between the pole and the car window?

It must be remembered that plaintiff was injured some time about midnight, on the 8th of June, 1888, after a walk about the city, the taking of some beer—a recreation of a few hours.

The driver says that when, plaintiff sat down, he put his head on his arm, which projected about four inches.

It is true that this circumstance is denied; but it is entitled to some consideration, as it is stated by a disinterested witness, an utter stranger, who had none either to please or to protect.

It is extremely difficult, not to say impossible, to realize how it occurred that plaintiff's head and the pole ever came in contact. It is shown that he was hurt only on one side.    Had his head been caught between the two, there would have been a pressure, probably a crushing of the skull, surely some bruise of the brain, and two marks on the head, with fatal results; there was nothing of the kind.

The probability, not to say the certainty, is that he projected his head out of the window, for some purpose, or other, and instantly drew it back, striking his forehead on the upright frame of the car window; and sustained, thereby, an injury.    For this, he has no one but himself to blame.

Yielding, however, to the theory, unverified though it be by the facts, that his head was caught, and that he was injured, as he says he was, the question arises, whether he is not *alone* responsible to himself for the harm sustained.

It is a striking circumstance in this case, that there was no suit brought against the railroad company; for, if it be true that the facts and the law are as plaintiff represents them to be, it does appear that he would have had a good action against the railroad company.    If the pole was dangerous, the railroad company was bound to know it.    It should have sought its removal, should have warned travelers in its cars, by proper notice; and on failure to do such things, as it ought to have done, and did not do, and injury was in consequence sustained, it might have been held to respond by adequate compensation.

The plaintiff abstained from suing the railroad company, no doubt, because the latter would have joined issue, by merely stating that he had no business to project his head, although, to some extent, as the courts have held, he might, owing to custom and local exigencies of climate, have allowed his elbow reasonably to protrude from the inside out by the window.    What the railroad company could have said, may not the defendant here equally set up?

It has been well said that a passenger is presumed to know the use of a seat from that of a window.    The former is used to sit in, the latter to admit light and air, each having its separate purpose.    The seat, he may occupy in any manner most comfortable to himself;

the window he can enjoy, but not occupy. Its use is for the benefit of all, not for the comfort of him alone, who, by accident, has gotten nearest to it. His negligence consists in putting his limbs where they ought not to be, and expose them to be broken, without his ability to know whether there is, or not, danger approaching. Wharton, Sec. 381.

" In actions for injuries through negligence, it is a general principle that a person is answerable for the consequences of his negligence only so far as they are the natural and proximate results of the injury, and might have been anticipated by ordinary forecast, and not for those consequences arising from a conjunction of his faults with circumstances of an extraordinary nature." Weeks on *Damnum absque injuria*, Sec. 115, p. 230.

It is no justification, in the present instance, to say that the plaintiff, in putting his head out, had a legitimate object in view, that of ascertaining the color of the car, to know if it was the right one.

It is not customary to put one's head out of a street car to find out about it. Common sense and prudence both dictate that, where a traveler, or passenger, desires information on such subjects, he should apply to the driver, whose duty it is to give it.

If a passenger has the right of putting out, besides his elbows, his head and chest, why should he not, also, have that of stretching out his arms, legs, and even hanging out his whole body?

The rulings in the Summers case, 34 An. 139, and in other kindred ones, some of which are cited in plaintiff's brief, are no foundation for the present suit. They rather militate against it.

These views dispense the court from considering other issues raised in the case, such as to the nature of the injury and the question of damages.

It is, therefore, ordered and decreed that the verdict of the jury be quashed and set aside; that the judgment thereon be avoided, reversed and annulled; and it is now ordered and adjudged that plaintiff's demand be rejected, with judgment for defendant, with costs in both courts.