Charles F. Claiborne,
Judge.

8126

Mrs. ROBERT CAILLIER

VS No. 8126

N. O. RY. & LT. CO. & al.

November 14th, 1921.

8126

MRS. ROBERT CAILLIER

VS No. 8126

N. O. RY. & LT. CO. & al.

CHARLES F. CLAIBORNE, JUDGE.

Plaintiff was riding in one of the street cars of the defendant company, when, by accident or inadvertence, her hand was extended beyond the window of the car; it came in contact with another car of defendant company going in an opposite direction, and was injured. Hence this suit in damages.

The plaintiff alleged that about eight twenty o'clock P. M. she was a passenger on a Tulane Belt car proceeding along Tulane Avenue going towards the lake; that she

"was seated in the third seat on the left hand side of the car, with her elbow on the window sill and her left hand resting against her cheek; that upon reaching a point near the comer of Hagan Avenue, the said car, owing to the defective condition of the tracks of said street railway company, gave a sudden jolt and tilted or leaned towards the adjoining track which parallelled within very close proximity the track on which said Tulane Belt car was running; that upon reaching said defective spot and at the moment the said jolt occurred, a car of the St. Charles Belt line was passing along the adjoining track going towards the river; that said jolt caused petitioner's elbow to slip from said window sill, and her hand slightly protruded from the window of said car, and came in violent contact with said car of the St. Charles Belt line, resulting in the tearing of the flesh of her left hand at the lower part of the thumb, causing an incised wound of the left hand, which made her

126

suffer great physical and mental pain; that her said injuries were caused solely and entirely by the negligence and carelessness of the railway company, and that plaintiff did in no wise contribute to the accident; that at the time of the accident there was and is now a city ordinance requiring the cars on the Tulane Belt line to be provided with screens for the protection of passengers; that at the time plaintiff suffered her injury the car in which she was seated was not so screened; that petitioner would not have been injured had the car been so screened". She prays for $1000 damages.

The defendant answered that the plaintiff permitted her arm to go outside of the body of the car so that it came in contact with some object on the adjoining track, and by so doing plaintiff's injuries were due to her own careless, negligent, and imprudent conduct.

There was judgment for defendant dismissing plaintiff's suit, and she has appealed.

Plaintiff's testimony is a practical reiteration of the allegations of her petition. She measures about 22 to 24 inches from her arm to the end of her fingers.

A. Brignae, a brother of the plaintiff testified: "We were sitting on the seat talking and she had her elbow on the window with her hand on her cheek, and I happened to be looking out, and there was a jar to the car, or bounce, somehow or other, and it made an awful big bounce and her elbow must have slipped and her hand dropped, and just as soon as her hand dropped, I heard her holloa, and I reached for her arm and pulled it in, and it was done already; at that time I saw a car passing the tracks at that point were in bad condition, it caused the car to tilt to the left; the distance from the ground to the window sill is about six feet; they repaired the

track after the accident; neither his sister nor himself made any complaint to the conductor of her injury.

Officer Shelter swears that he knows about where the accident occurred; the connections of the two tracks were loose; it made the cars jolt towards the left; the track was repaired some two weeks after that.

Officer Friess testifies that Mrs. Callier came to him while on his beat and complained about getting her hand hurt, and he brought them to the Carrollton barn; the distance between the two tracks is four feet, six inches from track to track; the cars protrude about eighteen inches over the rails; the track was in bad condition and made the cars lean towards each other; he noticed how the cars rocked; the top of the car was brought six or eight inches apart, and the windows about sixteen inches; the O. K. line of cars pass upon the same tracks; he did not examine the track; lots of people ride with their elbows out of the window; it is the first time he ever heard of any one getting hurt that way; when the cars go fast they swing very much from side to side.

W. F. Loan, chief clerk of the Claim Department of defendant company, testified that he was riding on the rear platform of the car on which the accident occurred with his mother; that on reaching the bridge near the New Basin, she informed him that an accident had occurred in the front part of the car; he went to the front part of the car and informed the motorman and tried to collect witnesses, but every one said they had not witnessed the accident; he noticed no unusual jolt of the car.

The witness produces sketches representing the measurements of the cars, of the seats, and of the windows. From these sketches it appears that the distance from the face of the rails to the outside top of the car is nine feet, five inches; and the distance from the face of the rail to the molding below the windows is five feet, one and seven-eights inches; the distance from

128

back to back of seats, at the top is twenty-nine inches; the distance from the back of the seat to furthest side of the window in front is twenty-two inches; the distance from the top of the seat to the sill or arm rest of the window is eight and one half inches; the arm rest is one and seven-eights to the molding or rain shed which is four inches wide, so that the distance from the inside of the window of the arm rest to the extreme edge of the rain shed is five and seven-eights inches.

The witness further states that he travels **four** time a day on this line as he lives in Carrollton; after the accident he took particular notice and did not perceive that the cars swayed to any extent more than the natural motion of the car; the distance between the cars at the molding board, as they pass each other is about sixteen inches.

Mrs. Mary S. Loan, mother of the last witness, says she was seated in the centre of the car in which the accident occurred; she saw a commotion and was told a woman got hurt; she noticed no jolting of the car, it was running smoothly.

R. A. Ainsworth was a conductor on the car when the accident occurred; he noticed no unusual movement or swaying of cars on that occasion; no one made any complaint of an accident except Mr. Loan; the track was in very fair condition, no rough places; he did not notice any repairs going on after the accident; he noticed a lady going out with her hand tied in a hand kerchief with some blood on it; she went to the barn foreman to make a complaint.

Felix Desmare was the motorman; he knew nothing of the accident until Mr. Loan told him of it; he noticed no unusual jolting or swaying of the car; the road was in the usual condition, some places more or less rocking than others; no extensive repairs were made after the accident, they did work immediately after for several days.

It was admitted that J. Dumm, the track foreman of defendant, would testify that on July 17 there was work done on

the Tulane Avenue tracks, consisting of repairing joints and
that there was more work done on November 21th. to 25th.

City Ordinance No. 12677 Council Series, to which plain-
tiff refers, is in the following words:

"That the Commissioner of Public Works be directed
to require all street railroad companies to place wire
screens on the windows of cars running on streets where
the tracks are in close proximity to trees, or on Canal
Street where the tracks are in close proximity to Clay
Monument, of sufficient height to prevent accident to
passengers; provided, that this ordinance shall not ap-
ply to cars which are so constructed as in the opinion
of said Commissioner to protect the passengers".
The very language of this ordinance applies to
"cars running on streets where the tracks are in close
proximity to trees, or to Canl Street where the tracks
are in close proximity to Clay Monument";

therefore, the ordinance does not control the management of cars
on streets like Tulane Avenue where there are no trees in close
proximity to the tracks, nor to any part of Canal Street, since
the removal of the Clay Monument. The Ordinance, however, serves
the principle, that where cars run so close to any obstacle as
to endanger the safety of passengers, it is the duty of the rail-
road under common law, to screen the windows or to take other
preservative precautions.

The Judge of the District Court decided the case on the
following propositions of law: 1o that a passenger cannot recover
damages from a carrier unless he can show that the carrier has
been guilty of some act of negligence; 2o the test of that neg-
ligence was when an experienced carrier could and should have
foreseen that a certain condition of things would possibly result
in damage. The Judge held that the two tracks of the railroad
were not in such close proximity to each other as to suggest dan-
ger, and no accident had occurred during the many years during

130

which the cars had been running under the same conditions. The
Judge further held that the testimony failed to prove that the
tracks *were* in such bad condition as to injure a passenger. He
failed to find negligence on the part of the defendant and decid-
ed in its favor.

The judge's appreciation of the facts and his statement
of the law are both correct. The defendant company can be held
only for negligence. Negligence has been defined to be the fail-
ure to use such care as is necessary to avoid a danger which
should have been anticipated, by reasons of which the plaintiff
has suffered injury. 114 La. 1011; 95 U. S. 439 (441). *6 Cyc 59*

A defendant can only be required to guard against a
probable or anticipated danger. 49 A. 1184 (1196); 118 N. W. 812;
68 S. W. 6; 67 N. Y. Supp. 409; 111 Mass.136; 21 Minn. 211; 44
Penn St. 375; 85 N. Y. Sup. 472; 37 A. 288; 1 Thompson on Neg.
§ 50, 58; 38 A. 159; 57 Kans. 499; 46 Pac. 941; 81 Ills. 76;
147 Mass. 315; 118 N. W. 812; 114 La. 1011; 53 Kans. 279; 36 Pac.
322; 43 A. 792. *18 S. W. 280*

* "Evidence that no accident had followed for a long
time after the existence of a certain fact would not be
determinative of its not being actually by a concurrence
of special facts dangerous; but the existence of the fact
without injury for a long time, with factors constantly
present calculated to produce injury if really dangerous
from those factors, would go far to do away with the an-
ticipation of resulting injury". 114 La. 1005 (1017).

The distance between the two cars was about sixteen inches;
if we add to that the width of the window sill, -five and seven-
eight inches, we have nearly twenty-four inches separating a per-
son's body in one car from the side of an adjoining car. The plain-
tiff testifies that she has a long reach and that the distance
from her arm to the end of her fingers is from 22 to 24 inches.
It would be the height of imprudence for any passenger to extend
her arm out of the car at full length; and the Company could not
anticipate that a passenger's arm resting on a sill of the window

131

would be extended to that length even when slipping from the
sill. If it slipped owing to the passenger's fault, certainly
the company could not be held liable; and if the slipping was
caused by an ordinary jolting or jar of the car, incident to its
operation, the company cannot be held liable. The passengers
assume the risks of those unavoidable conditions. 104 La. 157;
106 La. 592; 134 La. 654; 139 La. 439.

The plaintiff relies upon the cases of Summers, 34 A.
139, and Clerc vs R. Rd., 107 La. 370. But in the first case
the defendant was held liable because the distance between the
two cars on its lines was so small as to cause the cars almost
to collide with each other in the curves, and that plaintiff's
elbow projected out of the car only "a few inches". In the second
case, the defendant had left a door of an adjoining box car open,
in such proximity to the passenger car as to collide with and
break plaintiff's arm.

The Court said on p 379:

"In this case it is not claimed that the plaintiff
threw his hand or arm out of the car, and in so doing
struck some object on the outside. x x x At the utmost,
the plaintiff inadvertently or forgetfully permitted
his elbow to project somewhat beyond the outer edge of
the sill".

In the case of Moore vs Edison Co., 43 A. 798 which
was a case of a passenger who put his head out of a car and was
struck by a post standing at eight inches from the car window,
the Court said:

"Although to some extent, as the Courts have held, he
might, owing to custom and local exigencies of climate,
have allowed his elbow reasonably to protrude from the
inside out of the window. x x x If a passenger has the
right of putting out, besides his elbows, his head and
chest, why should he not, also, have that of stretching
out his arms, legs, and even hanging out his whole body"?

132

It is immaterial whether this stretching out of the arms is done intentionally or accidently. The crucial question is whether a reasonable distance was maintained between the cars so as to secure immunity from injury to the passengers under normal conditions, or whether injury could have been reasonably foreseen or anticipated from the relative distance of the cars? We think not, and the judgment is therefore affirmed.