VUILLEMOT v. AUGUST J. CLAVERIE & CO., INC., ET AL.

———

(December 16, 1929.  Opinion and Decree.)

———

Prowell, McBride & Ray, and Eugene Walet and L. H. Perez, of New Orleans,

and Emile Vuillemot, of New Iberia, attorneys for plaintiff, appellee.

Gordon Boswell, of New Orleans, attorney for defendants, appellants.

JANVIER, J. Plaintiff sues for damages for the death of his daughter, who was killed by an automobile truck.

He alleges that the truck was driven by defendant Cazaubon, while acting within the scope of his employment as an automobile truck driver for August J. Claverie & Co., Inc., the other defendant.

The defense of the corporate defendant is based on two contentions: First, that it was not its truck which struck and killed Miss Vuillemot; and, second, that if it was its truck, the driver was not, at the time, performing services for the owner, but had taken it out for his own purposes and convenience.

The accident occurred at about 7 o'clock in the evening on the viaduct of the Industrial Canal, and a short distance on the down river side of the span of the drawbridge. The young lady was walking near the edge of the viaduct, and there were several automobiles passing her, going in the direction in which she was walking. Defendants were able to produce no evidence as to how the accident took place, as they knew nothing about it until the afternoon of the second day after the accident, when Cazaubon was identified as the driver of the truck by a negro who claimed to have been an eyewitness. That the accident was caused by a truck seems to be fairly well established.

But was the truck negligently operated? The only witness who actually saw the accident from beginning to end was the negro, White, and he testifies that the truck ran into the lady from the rear while she was walking about two feet from the railing, "where all the rest of the people were," and that "she never was in the way of the truck." He also says that the only light on the truck was one lantern and that "it was burning dim." This negro fixes the speed of the truck at "about fifteen or twenty miles an hour."

Article 5 of Ordinance No. 6554, Commission Council Series, New Orleans, prohibits the operation of motortrucks over bridges at a greater speed than five miles an hour. We are not at all certain that it was intended by the framers of the ordinance to include within the term "bridges" the viaduct approaches of the Industrial Canal, but it seems to us that, whether the speed was violative of the statutory provisions, it was certainly in violation of the dictates of common prudence.

Then, too, since the accident was caused by a truck and since no truck stopped, either the driver of the truck which caused it was not keeping a proper lookout, or he drove away in an effort to avoid being caught. If he had been keeping a proper lookout, surely he would have noticed that the truck struck the young lady with its front fender. If he was not keeping a proper lookout, he was negligent. If he did know that he struck the young lady and did not stop, then his action in attempting to escape was tantamount to an admission of guilt. We have therefore come to the conclusion that, although the evidence as to the facts of the accident is very meager, there is sufficient in the record to warrant the finding that the young lady was killed by a truck and that the driver of the truck was at fault.

It next becomes necessary to determine whether there is in the record sufficient evidence to justify the conclusion that the

truck which caused the lady's death belonged to Claverie & Co. and was driven by Cazaubon.

It is admitted that the Claverie truck had crossed the viaduct at about 6:30 or 7 o'clock of the evening in question. This is just about the time at which the accident occurred. In the entire record the only evidence which in any way identifies the Claverie truck as the one responsible is that of the negro, White. His credibility is attacked on various grounds. It is charged that at one time he stated that the truck was brown and then changed his statement and said that the truck was yellow, and also that he first reported the license number to be 23009, where as he later stated that he had reported it as either 23008 or 23009. The Claverie truck, as a matter of fact, bore license No. 23008. It was also charged that he (White) should not be believed, because of certain other inconsistencies in his testimony. For instance, at one time he stated that he was sitting on the rail along the edge of the viaduct, whereas later he said that he was standing near the rail.

We are of the opinion that it would have been too great and too incredible a coincidence for the negro to have given as many facts as he did, if it were not the Claverie truck which was involved in the accident. Unquestionably the negro did report at an entirely unsuspicious time that the license number was 23009, and even if it be conceded that he did not at the same time state that it might be 23008, the last digits of the two numbers are so similar that a mistake might be readily made. Furthermore, it appears that the negro stated that the truck had a name on it, and that the first part of the name was "August J." and that the last name commenced with the letter "C." Also, when

taken to the Claverie establishment, he immediately identified Cazaubon as the driver of the truck. That the truck was yellow and not brown, and that it was not closed, but covered with a tarpaulin, are details about which he could have well been mistaken, in view of the darkness and of the speed at which the truck was driven away.

It thus appears as established that the truck which was responsible belonged to the Claverie Company and was driven by Cazaubon. Cazaubon is therefore liable, since, as it has already been shown, it was his negligence which caused the accident.

But what about the Claverie Company? Does mere ownership of the truck render the owner liable? Certainly not. Anderson vs. Driverless Cars, Inc., (No. 11,344 of the docket of this court) 124 So. 312, decided October 21, 1929; Bardt vs. Champon, 6 La. App. 763; Lanauze vs. A. Baldwin & Co., Ltd., 2 La. App. 345.

Unless, then, the truck was being operated in the affairs of the Claverie Company or unless, as contended for by plaintiff, the fact that Cazaubon had the permission of the Claverie Company to take the truck out whenever he so desired, rendered it liable for whatever damage the truck might do, the Claverie Company is not liable. The question then arises: Was the truck being operated, at the time, in the affairs of the Claverie Company. The uncontradicted, positive evidence shows that no hauling for the company was done on that day. It was a Sunday, and no meats were delivered on Sunday, as no markets were open. That meat even on Sunday might be sent to the express office, is claimed by plaintiff; but that such was the case is flatly denied by all of defendant's witnesses. Unless we are prepared

to accept the conjecture of plaintiff as more probable and more worthy of belief than the mass of positive evidence of defendant, we must come to the conclusion, which is abundantly justified by the record, that the truck, at the time of· the accident, was being driven by Cazaubon entirely for his own benefit and not in any sense in the affairs and concerns of the Claverie Company.

The sole question remaining, then, is whether or not the fact that Cazaubon had access to the truck at all times and had the general consent of the company to use it made the employer of Cazaubon, the owner of the truck, liable for any damage caused by it, whether he was operating it for the Company, or in his own affairs and for his own pleasure or convenience.

In support of this contention plaintiff cites Black vs. Rock Island R. R. Co., 125 La. 101, 51 So. 82, 26 L. R. A. (N. S.) 166, in which our Supreme Court said:

"Where the agents of a railroad company are placed in charge and control of its depot, locomotives, and tracks in a town, with authority to operate the locomotives over the tracks, for switching and other purposes (connected with the business of the company), and with actual power to operate them when they please, and the agents whilst operating them for their amusement across a street of the town negligently injure a citizen, who is legitimately using the street, such agents will be held to be acting, though improperly, within the scope of authority conferred on them, and the company will be held liable for the injury resulting from such action."

If the doctrine announced in the Black case be applicable to an automobile or a truck, then the owner of a truck or an automobile is liable for any damage caused by it in the hands of any one using it with his consent. That such is not the law of this state has been many times held. Tinker vs. Hirst, 162 La. 209, 110 So. 324; Atkins vs. Points, 148 La. 958, 88 So. 231.

While it is true that a casual reading of the quotation above set forth seems to indicate that the liability of the defendant was based upon the agency created by the permission to use the locomotive, a reading of the entire decision shows clearly that the liability resulted from the fact that the acceptance by a railroad company of a franchise and the exercise by it of the rights of eminent domain carry the duty of so operating the railroad property as not, by negligence, to injure the public, and that this duty cannot be evaded or avoided, or shifted, so long as the vehicle which caused the damage was in the hands of persons permitted by the railroad to use it, and even though, at the time of the accident, it was on the track entirely in the interests or for the pleasure of employees, and not in the concerns of the company. It thus appears to us that the reasoning of the Black case indicates that the court did not intend to hold that an owner of a vehicle is liable in all cases for injuries caused by that vehicle merely because, at the time of the accident causing the injuries, it is being operated by persons who are in the employ of the owner, if at the time of the accident they are not acting within the scope of the employment and are not performing services for their master, the owner of the vehicle.

That the basis of the decision in the Black case was founded on the reasoning that the duty owed by the acceptor of a franchise to the general public cannot be shifted or avoided, is clearly indicated by the following language which appears in that decision:

"Summing up our conclusions, upon the law of the case, we are of opinion that:

"1. A corporation exercising a franchise to operate steam cars on tracks crossing the streets of a town incurs the correlative obligation to use such privilege with due regard to the public safety and to maintain its tracks in a safe condition, and it cannot escape liability for failure to discharge such obligation by transferring, or attempting to transfer, it to an employe or other person. * * *

"4. The right to operate a steam locomotive on, or across a street in a town involves the use of an agency highly dangerous to life, limb, and property, and the responsibility for the exercise of such right cannot be shifted by the corporation in which it is vested to the person, who, by its authority, actually exercises it."

Any other conclusion than that which we have reached would necessitate a finding that an owner of an automobile, which is perfectly harmless in the hands of a competent and careful driver, is liable for any damage caused by it, whether in his own hands or in the hands of a person to whom he may lend it, regardless of whether or not it is being operated in his concerns.

It therefore follows that the judgment in favor of plaintiff and against defendant Cazaubon is correct, but that the judgment in favor of plaintiff and against defendant August J. Claverie & Company, Inc., is erroneous.

The amount allowed by the trial court was $3,000. It is always difficult to determine, particularly in a death case, just what amount will properly compensate the party who has sustained the loss. In view of the age of the young lady, and in view of the fact that plaintiff was not dependent upon her, we have come to the conclusion that the allowance was as nearly correct as is humanly possible to determine.

It is therefore ordered, adjudged, and decreed that the judgment in favor of plaintiff and against defendant Emile Cazaubon be, and it is, affirmed, at the cost of appellant, Cazaubon; and it is further ordered, adjudged, and decreed that the judgment in favor of plaintiff and against defendant August J. Claverie & Co., Inc., be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of defendant August J. Claverie & Co., Inc., dismissing plaintiff's suit at his cost.