## HADRICK v. BURBANK COOPERAGE CO., Inc., et al.

### No. 16671.

Court of Appeal of Louisiana. Orleans.

Jan. 10, 1938.

Henry & Kelleher and A. M. Suthon, both of New Orleans, for appellants.

Wm. A. Green and Clem H. Sehrt, both of New Orleans, for appellee.

Gordon Boswell, of New Orleans, amicus curiæ.

JANVIER, Judge.

Nola Hadrick, while riding in a trailer drawn by a motortruck, both of which were owned by Burbank Cooperage Company, Limited, received physical injuries for which she seeks redress. The vehicle was being driven at the time by Otis Scott, an employee of the said cooperage company, and the injuries were sustained when plaintiff's arm, which, to some extent, protruded beyond the side of the trailer, struck an upright portion of a bridge over which the vehicle was passing.

The defendants are Scott, who was operating the truck, the Burbank Cooperage Co., Limited, owner of the vehicle, and National Casualty Company, the liability insurance carrier of the Burbank Company.

The charges of negligence are that Scott was operating the vehicle at an excessive speed and that, in attempting, on the narrow bridge, to pass another automobile proceeding in the opposite direction, he swerved the truck and trailer so far to the right that a portion of the trailer came into contact with the side of the bridge, crushing petitioner's arm and hand with which she was holding on to a stanchion of the trailer and a portion of which arm extended a few inches beyond the side of the said trailer.

Liability in the Burbank Company is alleged to have resulted from the asserted fact that Scott was acting, at the time, within the scope of his employment by the said company and also from the fact—alleged in the petition—that petitioner was a passenger for hire with the knowledge and consent of the officials of the said company.

Liability in the insurer is declared to result from either or both of two facts: (1) That because of the provisions of Act No. 55 of 1930 the said insurer is directly liable as the insurance carrier of the said cooperage company; and (2) that, since the insurance policy contained what is known as an omnibus clause under which the protection of the policy is afforded to any person operating the vehicle with the consent of the owner, the said Scott was protected by the said policy, and that therefore, since he was so protected, Act No. 55 of 1930 renders the insurer liable.

Defendant Scott and the other defendants deny that the said Scott was in any way at fault, maintaining that the truck was being carefully operated at a moderate speed, and that, as the said vehicle proceeded over the bridge, it was necessary to drive it to the right in order to afford an automobile approaching from the other direction sufficient room to pass. Defendants maintain, however, that the vehicle was not driven sufficiently near to the edge of the bridge to cause danger to any one within the said trailer, and that the cause of plaintiff's injuries was the fact that she extended her arm, at full length, beyond the said trailer and pointed out to other passengers the stream over which they were passing and called it by name; that, as she did this, her arm struck an upright portion of the bridge, which was so far from the truck as to afford no danger at all to any one within the trailer, or even to any one extending an arm or hand only a few inches beyond its side.

As an alternative defense, the Burbank Company and the insurer both maintain that, at the time of the accident, Scott was not acting within the scope of his employment and that his employer was in no way involved or interested in the venture in which he was engaged, and, finally, as a separate and independent alternative defense, the insurer contends that, even if it be shown that Scott was at fault and that he was acting at the time within the scope of his employment by the Burbank Company, nevertheless there resulted no liability in the insurer, for the reason that the policy, under which liability is sought to be fastened upon the said insurer, provides that there shall be no protection afforded while the vehicle contemplated by the policy is used as a carrier of passengers for hire.

The matter was tried by jury, which rendered a verdict for plaintiff against all defendants in the sum of $2,500. Scott, the

driver, has appealed devolutively, and the Burbank Company and the insurer have appealed suspensively.

We shall first consider the facts of the accident itself in an effort to determine whether the driver was at fault.

The trailer, in which plaintiff together with some 25 or 30 other passengers was riding, was not intended for the transportation of passengers. It was constructed with flaring upright stakes extending from the bottom upwards, but curved so that the body of the trailer was much wider at the top than at the bottom. These upright stakes were placed a few feet apart and, attached to them, were rails a foot or so apart, extending lengthwise from the front to the rear of the trailer. The trailer was attached to and drawn by a motor-driven tractor, which is the name applied to a motortruck which has no body, but which is used to draw a trailer. Plaintiff was on a seat built parallel to the right side of the trailer and at a point near the middle. She states that her arm was not extended beyond the side slats of the trailer more than a few inches and that her hand grasped one of the right-hand stakes of the body. While she contends that the vehicle was operated at an excessive speed, the record convinces us that the speed was moderate and that, in this respect, Scott was not at fault.

The bridge over which they were crossing was an old one, constructed of wood, though the uprights may have been of iron; the record does not make it certain whether they were of wood or iron. These upright portions extended higher than the side of the truck. Just as the vehicle approached the drawspan on which the upright portions were erected, an automobile, going in the other direction, reached the other side of the drawspan, and it became necessary for Scott to turn his vehicle to the right. in order to afford a space sufficiently wide for the other automobile to pass and plaintiff's arm was struck by one of the uprights.

Defendants deny that the trailer struck any portion of the bridge, asserting that there was ample clearance between the side of the bridge and the trailer and that plaintiff's arm would not have been injured at all but for the fact that she extended it at full length beyond the side of the vehicle.

██ That the side of the trailer was quite close to the uprights of the bridge is conceded by all, though all of defendants'

witnesses, save one, deny that there was actual contact. Though Scott contends that the trailer did not strike the bridge and though the record shows that the said trailer, after the accident, exhibited no evidence of having come in contact with any portion of the bridge, we think that the evidence that there was contact between the two preponderates.

Mary Smith, one of the passengers, says: " * * * When we were going across the bridge, it hit against the side rail. * * * "

Eleonore Mason testified as follows: " * * * I could feel it; it scraped when it hit the side of that thing, you could feel the whole pass of it; it scraped the side of the truck."

Martha Smith, who was placed on the stand by defendants, said: " * * * It hit something or other when it was going on the bridge."

Later she said, "it seemed to me like it struck something on the edge of the bridge." Still later, when asked if "it seemed like the truck hit the edge of the bridge, * * *" she said, "yes, sir, it looked to me like when he drove to the side."

It is true that other witnesses produced by defendants were of the opinion that there had been no contact between the trailer and the bridge, but we feel that, in view of the positive testimony above quoted, the trailer did strike the bridge, and we would not be justified in reaching the conclusion on this question of fact that there was no contact between the two.

It is well established that plaintiff, as she reached the draw bridge, extended her arm at full length and pointed out the stream to her fellow passengers, and, if it could be said that but for this action on her part she would not have been injured, then there could be no judgment in her favor, for in Caillier v. New Orleans Ry. & Light Co., 11 La.App. 93, 120 So. 76, 78 we said: "It would be the height of imprudence for any passenger to extend her arm out of the car at full length."

██ There can be no doubt, however, that it is not negligence for a passenger to permit a portion of an arm or a hand to extend only a few inches beyond the side of the vehicle in which the passenger is riding. See Summers v. Crescent City Railroad Co., 34 La.Ann. 139, 44 Am.Rep. 419; Clerc v. Morgan's L. & T. R. & S. S. Co., 107 La. 370, 31 So. 886, 90 Am.St.Rep.

319. If, therefore, plaintiff's hand and arm had been in proper position holding on to the upright side of the truck and extending beyond the side only an inch or two, since there was actual contact between the bridge and the side of the truck, she would nevertheless have been injured when that contract occurred. If, then, she would have been injured even had her arm not been extended at full length, or been resting on a portion of the truck and extending a few inches beyond the side, it cannot be said that the fact that her arm was so extended was the proximate cause of the injury, and that, had she not so extended it, she would not have been injured. The proximate cause was the fact that the truck was driven in too close proximity to the side of the bridge.

■■ Recovery will not be defeated by a negligent act on the part of a plaintiff if it appears that the accident would have occurred and the injury would have been sustained even had the negligent act not been committed. In other words, a negligent act will not prevent recovery unless there is causal connection between the act and the injury. See Stout v. Lewis, 11 La. App. 503, 123 So. 346. Scott was at fault in driving too close to the side of the bridge, and his fault was the proximate cause of plaintiff's injuries, and he is therefore liable.

We next consider the question of whether the cooperage company is liable for the results of Scott's carelessness.

The record leaves no doubt whatever that the defendant cooperage company was in no way concerned or involved in the venture in which Scott was at the time engaged. He had been a trusted employee for a long time and, on one or two prior occasions, had borrowed from his employer the truck and trailer for the purpose—so the employer was informed—of moving his family or attending to other personal affairs with which the employer was in no way concerned. It appears that on one or two of these prior occasions he had used the vehicle to transport picnic parties of various kinds, and for the service had charged the persons attending these parties. But there is not the slightest intimation in the record that the employer had any knowledge whatever that Scott had been engaged in any such venture.

■ There is considerable doubt in our minds on the question of whether the loan of the truck by Mrs. Burbank, the wife of the president of the cooperage company, may be considered as a loan by the corporation itself. But conceding, for the moment, that it may be so considered, the record shows conclusively that it was loaned to Scott for his personal use, and it is well settled that the mere loan of a truck or an automobile for personal use does not render the owner liable if the owner has made reasonable investigation into the ability of the borrower to carefully operate the vehicle: "It is well settled in this state that the owner of an automobile is not liable for the damages caused while his automobile is being operated by a third person with his knowledge and consent, unless he was present or the third party was his agent or servant and was acting within the scope of his agency or employment." Adams v. Golson, 187 La. 363, 174 So. 876, 878. See, also, Atkins v. Points, 148 La. 958, 88 So. 231, and Vuillemot v. August J. Claverie & Co., 12 La.App. 236, 125 So. 168.

It is also well settled that the owner of a motor vehicle who loans it for one purpose is not made liable by the fact that the borrower uses it for another. See Stephenson v. List Laundry & Dry Cleaners, Inc., et al., La.App., 168 So. 317, affirmed 186 La. 11, 171 So. 556.

It is said, however, that, even if the employer is not liable, because of the so-called "omnibus" clause in the policy, the insurer is liable since Scott, the driver, is liable. This omnibus clause provides: "If the stated and actual use of the automobile covered by this policy is 'pleasure and business' or 'commercial' any person or persons while riding in or operating any of such automobiles and any person, firm or corporation responsible for the operation thereof, shall be considered as an additional Assured under this policy."

■ But it must be borne in mind that the policy provided also that there should be no protection thereunder if the vehicle should be used for "the carrying of passengers for a consideration." It cannot be denied that the vehicle was being so used because the record abundantly shows that it was. In fact, one of the allegations of plaintiff's petition is that she "was a passenger for hire." Obviously, then, the protection of the policy was not afforded to Scott, since he was operating the vehicle for a purpose expressly excluded from the protection of the said policy. It necessarily

follows that there can be no action against the insurer.

Counsel for plaintiff calls attention to certain cases which he contends establish the right to recover in spite of such policy conditions if the violations of such conditions are only occasional and infrequent. But in each of the cases cited there was, obviously, no relationship or causal connection between the infrequent violations of policy conditions and the losses sustained. Where an automobile is insured against fire or theft and the policy provides that the said automobile shall be used only for pleasure, if it is destroyed by fire, or is stolen, it cannot be said that the infrequent use for commercial purposes was in any way responsible for the loss. And that is the "ratio decidendi" of all of those cases which hold that there may be recovery in such situations. But, where a public liability policy provides that there shall be no protection if a vehicle is used to transport passengers for hire and a passenger for hire is injured while being transported, obviously the violation of the policy condition is the direct cause of the loss, for the use of a car to transport passengers for hire places upon the operator a liability and an obligation much greater than is borne by the operator of a car used only for pleasure. Among the cases cited by counsel for plaintiff are Firemen's Insurance Company of Newark v. Rye, 160 Ark. 212, 254 S.W. 465, 466, Bloom v. Ohio Farmers' Insurance Company, 255 Mass. 528, 152 N.E. 345, and Marks v. Home Fire & Marine Insurance Company, 52 App.D.C. 225, 285 F. 959.

In the Rye Case the loss was caused by fire. The policy provided that "The uses to which the automobile described is and will be put are private pleasure uses and business calls, excluding commercial delivery." The automobile was used occasionally in making commercial deliveries. Obviously, there was no connection between the violation of the policy condition and the destruction of the vehicle.

In the Bloom Case the policy insured against theft, robbery, or pilferage. The court said that "the policy did not provide that any use of the car for business purposes should render the policy void." Apparently the policy did provide that the automobile should be used for pleasure purposes and apparently, also, the said automobile was occasionally used for business purposes. The court found that this occasional use

did not prevent recovery for loss by theft. But the court made the significant observation that "at most a use for business would suspend liability during such use." It appears that the car was stolen while being used for one of the purposes permitted by the policy, to wit, pleasure. All that this case is authority for is that in such situation there is no coverage while the automobile is being used for a purpose not permitted, but that the coverage automatically reattaches as soon as the car reenters service for a purpose which is permitted.

Of the cases cited, the only one which involved a policy condition that the automobile should not be used for carrying passengers for compensation is Marks v. Home Fire & Marine Insurance Company. But even in that case the loss was caused by fire and was not due to injury sustained by a passenger. The insured contended that he had not carried passengers for compensation, and the question involved was whether or not he had done so. He contended that on one or two occasions he had used his car to transport certain persons on sight-seeing expeditions and had not received payment therefor, but had merely accepted "gratuities." The court held that the question involved was whether or not, under the facts, the amounts given him could be considered as "payments," or whether they should be construed merely as "gratuities." The conclusion may be drawn that, if the payments had been considered by the jury as payments for transporting passengers for hire, there would have been a decision that there was no coverage under the policy.

We are of the opinion that in the case at bar, since the policy prohibited the use of the automobile for carrying passengers for hire, it afforded no protection either to its owner or to any one using it with the owner's consent, while engaged in such a venture. We therefore conclude that, though Scott, the driver, is liable for the results of his own negligence, there is no liability in the cooperage company nor in the insurer.

The injuries sustained by plaintiff justify the amount awarded. Her right wrist was fractured and dislocated and there has resulted a permanent deformity. The injury was quite painful for a period of from six to eight weeks.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is reversed in so far as it runs

against the Burbank Cooperage Company, Inc., and National Casualty Company, and that plaintiff's suit as against those defendants be and it is dismissed at her cost. In all other respects the judgment is affirmed.

Reversed in part; affirmed in part.