132 So.2d 879 (1961)
241 La. 1012
Luther SPIERS
v.
CONSOLIDATED COMPANIES, Inc., et al.
No. 45521.
Supreme Court of Louisiana.
June 29, 1961.
Rehearing Denied October 4, 1961.
*880 Taylor, Porter, Brooks, Fuller & Phillips, Cadwallader & Perkins, Baton Rouge, for defendants-appellants-relators.
Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for plaintiff-appellee-respondent.
HAWTHORNE, Justice.
In this case we are called upon to review a judgment of the Court of Appeal which affirmed a judgment of the district court awarding to plaintiff Luther Spiers, a conductor for the Louisiana & Arkansas Railway, $50,000 for personal injury sustained by him. The defendants are Consolidated Companies, Inc., and its liability insurer, Travelers Insurance Company.
Plaintiff in brief filed in this court states that the original opinion of the Court of Appeal "contains a detailed and fair statement of the case and is now reported as Spiers v. Consolidated Companies, 125 So.2d 795";[1] hence we shall set forth only such facts as may be necessary for our decision in the case.
Defendant Consolidated Companies, Inc., maintained and operated through a subsidiary a large warehouse on the west side of the L. & A. right of way in the City of Baton Rouge. The L. & A. constructed a spur or side track along the western edge of its right of way parallel and adjacent to the warehouse in order to provide direct access to railway facilities for defendant and others. The area or space between the spur and the mainline tracks was 12.8 feet. In 1933, approximately 27 years ago, the railway and the defendant Consolidated entered into an agreement which provided with reference to this space:
"13. Carrier agrees to permit Shipper and assigns to use the space between Carrier's main line and the proposed spur track as a private driveway between the hours of 6 a. m. and 6 p. m., it being expressly understood that this shall not constitute a dedication of this property to public use but is for the sole benefit of Shipper and assigns. Any vehicle using driveway shall at all times have a driver in charge so as to immediately move said vehicle on the approach of trains or as otherwise necessary * * *."
The space covered by this agreement, situated between the spur or side track and *881 the main line, was within the L. & A. railroad yards in the commercial district of the City of Baton Rouge. The maximum legal speed limit for trains in this area was eight miles per hour, and the rules of the railroad provided that trains should be operated in the yard limits in such a manner that the engineer should be able to stop short of obstructions or unlined switches.
Pursuant to the agreement between Consolidated and the railroad, for 23 years the space between the spur line and the main line was used not only by the trucks of Consolidated but also by those of other shippers and even the L. & A. Railway itself for loading and unloading freight from boxcars on the railway siding, and during this time it is evident that innumerable cars were loaded and unloaded. Due to the size of this area only very small trucks could use it for its intended purpose without obstructing the main track of the L. & A. Railway. Large trucks, of course, blocked the main line. During all these years trains, including freight trains, passenger trains, and switch engines, had occasion to stop innumerable times to permit trucks to be removed from the main line of the railway. The officials and employees of the railroad, including Spiers himself, knew of this situation and accepted it without complaint, and this is undisputed. The loading and unloading of boxcars at this particular site, pursuant to the agreement and with the full consent and approval of the railroad, had gone on for over 23 years without injury to anyone.
Because of the position of the spur track in relation to the main line, the blocking of the main line when the area was being used was inevitable, and it is clear to us that the agreement between the railway and the defendant Consolidated contemplated the blocking of the main line because the use of the area as a private driveway was limited to the hours of daylight from 6:00 a. m. to 6:00 p. m., because the agreement provided that a vehicle using the driveway should at all times have a driver in charge so that it could be immediately moved on the approach of trains, and also because the railroad had a right to install gates which Consolidated was to keep closed except when the space was in use for Consolidated's purposes. That the blocking of the main line was contemplated is further established by the fact that for a period of 23 years on innumerable occasions the line was blocked with the full knowledge, consent, and approval of the railroad, for certainly the railroad would not have permitted this practice to become established if the blocking of its line had not been contemplated by the agreement. Furthermore, if the space itself had been large enough to permit the loading and unloading of boxcars without blocking the main line, the trains could have passed even when a truck was using the space, and the provisions in the portion of the agreement which we have quoted would have been unnecessary.
Plaintiff Luther Spiers was a conductor in charge of L. & A. Freight Train No. 42 on its regular run from New Orleans to Kansas City. On the date of the accident, October 16, 1956, this train, consisting of over 100 cars, was proceeding north, and as it entered the railway yards it was travelling, according to the engineer as closely as he could estimate, at eight miles per hour.[2] The engineer stated that as he rounded a curve a few hundred feet south of defendant's warehouse, he observed that the main line was blocked by a truck;[3] that to avoid striking this truck it became necessary for him to make an emergency stop. Plaintiff, the conductor, was riding in the caboose, and the jar caused by the emergency stop knocked him from his seat. According to plaintiff, this fall caused a *882 strain to his right side, and because of this he developed a right inguinal hernia. On October 27, 1956, 11 days after the accident, he underwent surgery for the correction of this hernia. On November 1, 1956, he was discharged from the hospital, and nine days later, on November 9, he suffered a heart attack which has rendered him totally and permanently disabled.
After the accident plaintiff instituted suit in the United States district court to recover from the railroad a large sum for injuries sustained by him in the course of his employment. In his petition he alleged that the accident with which we are here concerned was caused by the negligence of the railroad in permitting its main line to be blocked by a truck or other vehicle of one of its customers at or near the end of a curve, where to the knowledge of the railway, its agents, servants, and employees it would be difficult for an engineer to see a vehicle blocking the main line until the train was near it; that the railway permitted the truck to be left standing on the main line which was not a street or crossing, and that this constituted negligence; further, that the railway engineer on the train was negligent in failing sooner to see the truck and in travelling at the speed at which he was operating, and was also negligent in the manner in which he suddenly and abruptly stopped the train, causing plaintiff to be thrown forward and sustain injuries. In a compromise settlement the railway paid the plaintiff $20,000. Plaintiff reserved his right against Consolidated but reduced his demand against Consolidated to $50,000, the amount of liability insurance carried by Consolidated with Travelers Insurance Company. This requirement was made by the railroad to lessen any friction existing between it and Consolidated, one of its valued shippers.
The basis of plaintiff's suit against Consolidated is either that the disabling heart attack was the direct result of the injury sustained in the accident of October 16, 1956, which was caused by defendant's negligent blocking of the railroad line, or that the negligent blocking of the main line of the railway by defendant's truck caused the emergency stop of the train, that the emergency stop caused his fall, that the fall caused the hernia, that the hernia necessitated the operation, and that the operation brought on the disabling heart attack.
Defendant contends that because of the unusual and peculiar circumstances which existed in this case it was not guilty of negligence, or that even if it were negligent, its negligence was not as a matter of law the proximate and contributing cause of the accident; that the negligence of the engineer in failing to make a gradual, normal stop when he had ample time to do so was the sole proximate cause of the accident; and also that plaintiff has failed to prove by a preponderance of the evidence a causal relationship between the accident, the operation, and the disabling heart attack.[4]
The case in the district court was tried before a jury, which awarded plaintiff $50,000. The district judge overruled defendant's motion for a new trial, and stated that there was some evidence to support the jury's verdict although personally he might have some doubt about it, and that he would not reduce the award although he considered it generous.
The Court of Appeal on original hearing reversed the judgment of the lower court and held that the negligence of the driver of the truck was not the proximate cause of the accident, and that the negligence of the engineer was the sole proximate cause of the accident. Judge Tate dissented, being of the opinion that the majority had correctly stated the law but basing his dissent on his interpretation of certain facts found by the majority. He subsequently *883 wrote what is styled an "addendum to dissent", in which he stated that he erred in his original dissent when he said that he agreed with the legal principles announced by the majority and reiterated his disagreement with the majority's finding of fact. A rehearing was granted, and the court, with Judge Tate as its organ, concluded that the driver of the truck was negligent, and that as a matter of law his negligence was a contributing cause of the plaintiff's injury. In arriving at this conclusion the court cited and relied on a decision of this court, Jackson v. Jones, 224 La. 403, 69 So.2d 729, and held, in effect, that Consolidated's truck driver should have foreseen that the obstructing vehicle would hamper the inherently dangerous operation of the heavy and hard-to-stop railway trains and would cause a collision or the dangerous maneuver of a sudden train stop to avoid a collision. Judge Landry and Judge Lottinger dissented.
Generally the intentional blocking of the main line of a railway is negligence, but the question posed here is whether defendant was negligent under the facts and circumstances of the instant case. In other words, we must decide whether the defendant or its employees could or should have foreseen the risk or danger to the plaintiff.
The law is well settled that a person cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that he had knowledge, or reasonably was chargeable with knowledge, that the act or omission involved danger to another. See 38 Am.Jur., Negligence, sec. 23, p. 665. In the case of Anderson v. London Guarantee & Accident Co. La.App., 36 So.2d 741, 746, the Court of Appeal cited numerous cases of this court on the subject, saying:
"* * * Our jurisprudence is replete with cases which clearly define the degree of care required of an actor, from some of which we cite extracts as follows:
* * * * * *
"`"Negligence" has been defined to be the failure to use such care as is necessary to avoid a danger which should have been anticipated, by reason of which the plaintiff has suffered injury. Lopes v. Sahuque, 114 La. [1004], 1011, 38 So. 810; Baltimore & P. R. Co. v. Jones, 95 U.S. 439, 441, 24 L.Ed. 506; 6 Cyc. 591.
"`A defendant can only be required to guard against a probable or anticipated danger. New Orleans & N. E. R. Co. v. McEwen & Murray, 49 La.Ann. 1184, 1196, 22 So. 675, 38 L.R.A. 134 * * *.' Caillier v. New Orleans Railway & Light Company, 11 La.App. 93, 120 So. 76, 78.
"`See also, Brandt v. New Orleans Public Service, Inc., 15 La.App. 391, 132 So. 244.
"`The common usage of a business or occupation is frequently stated to be a test of care or negligence, and accordingly, conformity to custom or usage is very generally regarded as a matter proper for consideration in determining whether or not sufficient care has been exercised in a particular case, * * *.' 45 Corpus Juris 706.
"The Supreme Court of this State in New Orleans & N. E. R. Company v. McEwen & Murray, 49 La.Ann. 1184, 22 So. 675, 680, 38 L.R.A. 134, said:
"`"Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made is insufficient as against an event such as may happen once in a lifetime, or perhaps twice in a century, does not * * * make out a case of negligence upon which an action in damages will lie."'
"In the same case our Supreme Court quoted with approval from the case of Huber v. LaCrosse City Railway Company, 92 Wis. 636, 66 N.W. 708, 31 L.R.A. 583, 53 Am.St.Rep. 940, decided by the Supreme Court of Wisconsin, affirming what it had said in Block v. Milwaukee St. Railway Company, 89 Wis. 371, 61 N.W. 1101, 27 L.R.A. 365, 46 Am.St.Rep. 849, as follows:
*884 "`"The negligence is not the proximate cause of the accident, unless * * * under all the circumstances, the accident might have been reasonably foreseen by a man of ordinary intelligence and prudence. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence. * * * A mere failure to ward against a result which could not have been reasonably anticipated is not actionable negligence."' Keller v. Stevenson, La.App., 6 So.2d 569."
For over 20 years Consolidated and its customers as well as those of the railroad unloaded goods from boxcars on this spur or side track, and during this period the L. & A. engineers brought their trains to a normal stop whenever it was necessary to permit trucks blocking the main line to be moved. Consolidated and its employees certainly could not have been aware of any foreseeable danger inherent in their activities, and could not have been expected to anticipate the train's emergency stop which caused plaintiff's injury. Therefore, considering all the facts and circumstances of this case which we have set out above, we do not think that defendant Consolidated was negligent in blocking the main line of the railway.
In the Court of Appeal on rehearing Judge Landry in his dissent, after stating that the evidence in this case failed to show that the employees of Consolidated were negligent in parking their truck across the tracks in view of the unusual and peculiar circumstances existing in the case, said that if they were negligent, their negligence was a remote and not a proximate cause of the accident, and that the sole and only proximate cause of the accident was the negligence of the engineer in failing to timely stop the train.
Since we have concluded that defendant was not negligent, plaintiff cannot recover, and there is no necessity for us to discuss defendant's contention that if it was negligent, its negligence as a matter of law was not the proximate cause of the accident. As to this contention the majority opinion of the Court of Appeal on rehearing assumed negligence on the part of the railroad engineer which contributed to the accident, but concluded that defendant's act in blocking the main railway line created a foreseeable risk to others, making it liable notwithstanding the negligence of the railroad engineer. The Court of Appeal cited Jackson v. Jones, 224 La. 403, 69 So.2d 729, 733, which is full authority for the legal principle there announced:
"The determination of the proximate or efficient cause of an accident, as distinguished from the remote cause, is sometimes difficult of practical application and often turns `upon the very nicest discriminations'. The Louisiana Mut. Ins. Co. v. Tweed, 7 Wall., U.S., 44, 19 L.Ed. 65. However, in matters like this, the criterion governing liability is whether the person creating the danger could or should reasonably have foreseen that the accident might occur. If such were the case, then he is liable notwithstanding the intervening cause. See 38 Am.Jur. Verbum `Negligence' § 70, pages 726, 727."
This principle of law, however, is not applicable to the facts of this case, under which we have concluded that the acts of Consolidated did not create a foreseeable danger to others and that its agents could not have been expected as reasonable, prudent persons to anticipate the train's emergency stop which caused plaintiff's injury. If we should, however, assume that defendant was negligent, there would still remain in our mind serious doubt whether such negligence was the proximate cause of the accident; and we would probably conclude, as did Judge Landry in his dissent, that the railway was negligent and that its negligence was the proximate cause of the accident.
Since we have concluded that there is no liability on the defendant, we need not discuss its contention that the plaintiff has failed to prove by a preponderance of the *885 evidence a causal relationship between the accident, the operation, and the disabling heart attack.
For the reasons assigned the judgment of the Court of Appeal affirming the judgment of the district court is annulled, reversed, and set aside, and plaintiff's suit is dismissed at his costs.
SANDERS, Justice (dissenting).
In my opinion, the Court of Appeal correctly concluded that the intentional act of defendant's truck driver in obstructing the main railroad line constituted negligence notwithstanding the contract between defendant and the L. & A. Railway and prior practice. Compare Englert v. New Orleans Ry. & Light Co., 128 La. 473, 54 So. 963.
As I view the case, the most serious issue posed is whether the negligence of the defendant was a proximate, or juridical, cause of the harm to plaintiff. This question is not free from difficulty. In this state and elsewhere, the subject of responsible causation is obscured by a smog of empty phrases and verbal intricacies. See Blanks v. Saenger Theaters, 19 La.App. 305, 138 So. 883, 888; Green, Rationale of Proximate Cause (1927) pp. 195-202. It is difficult, if not impossible, to reconcile the decisions that have dealt with it. See II Louisiana Annotations to the Restatement of the Law of Torts (1941), Sections 431, 447; 6 Tulane Law Review 476.
In the instant case, the negligence of the defendant was a substantial factor in producing the harm to the plaintiff. The intervening negligence of the Railway was not a superseding cause for the employees of the defendant should have reasonably foreseen that an emergency stop of a train might occur. Jackson v. Jones, 224 La. 403, 69 So.2d 729. The defendant cannot be absolved from responsibility merely because the negligence of the Railway contributed to the result.
I respectfully dissent.
NOTES
[1] The original opinion in the Court of Appeal written by Judge Landry reversed, annulled, and set aside the judgment of the district court in favor of plaintiff. On rehearing the Court of Appeal through Judge Tate affirmed the district court's judgment.
[2] Plaintiff Spiers in a deposition testified that at the time of the accident the train was proceeding at a speed of 10, 12, or 15 miles per hour.
[3] This truck was owned by Consolidated and was in the charge of one of its employees.
[4] Defendant also contends that plaintiff has not discharged the legal burden of proving that a hernia resulted from the accident of October 16. We think, however, that this has been proved, but it is immaterial to our decision of the case.